Motion for Rehearing En Banc Granted; Panel Opinion of February 26, 2004
Withdrawn; Reversed and Remanded and Majority and Dissenting En Banc Opinions
filed October 13, 2005









 

Motion for Rehearing En Banc Granted; Panel Opinion of
February 26, 2004 Withdrawn; Reversed and Remanded and Majority and Dissenting
En Banc Opinions filed October 13, 2005.

                                                                              

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-00-00091-CV

____________

 

THE STATE OF TEXAS, Appellant

 

V.

 

PR INVESTMENTS AND
SPECIALTY RETAILERS, INC., Appellees

 



 

On Appeal from the County
Civil Court at Law No. 4

Harris County, Texas

Trial Court Cause No. 691,263

 



 

M A J O R I T Y   E N  
B A N C   O P I N I O N








This is a condemnation case in which the
State of Texas appeals from the trial court=s dismissal of its
suit for condemnation of a small portion of a privately-owned tract of
land.  The main issue in this appeal is the effect of the
State=s decision, five days before the date
set for the trial de novo in the county court at law, to change the specifics
of its planned highway project, without changing the allegations in its
pleadings and without changing the property that it sought to condemn.  The trial court concluded: (1) this change in
plans by the State deprived the court of jurisdiction over the trial de novo;
(2) this change meant that the State did not bring this condemnation proceeding
properly under section 21.0195(c) of the Texas Property Code, thus justifying
an award of all attorney=s fees and expenses to the property owners; and (3) the trial court
could properly dismiss the condemnation action and award attorney=s fees and
expenses as sanctions under Texas Rules of Civil Procedure 13 and 215, under
the Frivolous Claims Act, and under the trial court=s inherent
power.  Because the trial court erred in
all of these conclusions, we reverse its judgment and remand for further
proceedings consistent with this opinion.

                        I. 
Factual and Procedural Background

Appellee PR Investments owns a 23-acre
tract of land located on the east side of South Main Street approximately one
half mile south of Loop 610 and just north of a proposed extension of West
Belfort in Harris County.  Appellee
Specialty Retailers, Inc. owns a leasehold interest in a portion of the 23-acre
tract.  At this particular location,
South Main Street consists of two lanes in each direction separated by a grass
median.  The Texas Department of
Transportation has proposed to convert South Main Street from a four-lane road
to Highway 90ACa controlled access highway, six lanes
wide with frontage roads for vehicular access to and from the highway, and
bridges over all major roads intersecting the highway (hereinafter the AProject@).  As part of the construction plan, the State
of Texas sought to condemn a strip of PR Investments=s property
approximately 23 feet, 8 inches wide at the southerly end of the property
tapering north to the original right-of-way. 
This tract of land has a total area of .3407 acres.








The original plan did not provide for
acceleration and deceleration lanes on the frontage road for Northbound Highway
90A near the juncture with the driveway from PR Investments=s remaining
property.  (Because the evidence shows
that this plan was later certified by Stuart Corder, a traffic engineer, it is
hereinafter referred to as the ACorder Plan.@).  Even before the State filed its petition for
condemnation, PR Investments and Specialty Retailers, a tenant doing business on
PR Investments=s property (hereinafter collectively referred to as the AProperty Owners@), expressed concerns regarding whether the
highway improvements would impair safe access to the remainder of the
property.  On November 12, 1997, the
State filed its original petition for condemnation, describing the land to be
condemned by metes and bounds, but not limiting the State to any particular
plan for the Project.  Both before and
after the State filed the original petition, the State discussed potential
modifications to the plan for the Project to accommodate the concerns expressed
by the Property Owners.  In an attempt to
allay their concerns regarding safe access, the Texas Department of
Transportation devised another proposed plan in February 1998, which provided a
sheltered lane for deceleration of vehicles turning into the property and a
corresponding acceleration lane for vehicles exiting the property and returning
to the highway.  (Because this plan was
later certified by Stephen A. Sparks, a traffic engineer, it is hereinafter
referred to as the ASparks Plan.@)

The Sparks Plan and the Corder Plan are
depicted on the following diagrams:

 








Sparks Plan                                       Corder Plan

 




 
 
 
 
 




 




 
 
 
 
 




 

 

 

 

 

 

                                                                                                                             








The county court at law appointed special commissioners,
and the commissioners conducted a hearing on May 6, 1998.  Although the Sparks Plan did not contain all
of the modifications to the Corder Plan requested by the Property Owners,
Specialty Retailers was satisfied that the Sparks Plan sufficiently addressed
its concerns regarding the Project. 
Therefore, Specialty Retailers did not participate in the special
commissioners= hearing. 
When considering the amount of compensation due to PR Investments, the
commissioners were apprised of the proposed plan to construct a sheltered lane
for deceleration and acceleration when entering or leaving the remainder of PR
Investments=s property.  Under section 21.042 of the Texas Property
Code,[1]
at the conclusion of the hearing the commissioners assessed $166,000 as the
damages to be paid by the State jointly to PR Investments and Special
Retailers.  PR Investments and the State
both objected to the amount of compensation, and the county court at law
ultimately scheduled the trial de novo in the condemnation action for December
6, 1999.

Prior to trial, in late 1999, the Texas
Transportation Institute conducted a study in which it concluded the frontage
road in front of PR Investments=s property Awould operate
better without the dedicated deceleration lane.@  Moreover, the Texas Department of
Transportation concluded that the proposed deceleration and acceleration lanes
would prevent construction of additional driveways into PR Investments=s property,
thereby limiting access in the future. 
Accordingly, on December 1, 1999, the Texas Department of Transportation
decided to return to the Corder Plan, which did not contain the deceleration
and acceleration lanes contained in the Sparks Plan.  The State=s attorney advised
PR Investments of the Corder Plan the same day it was certified; however, he
did not advise Specialty Retailers of this change.  Although the State provided a copy of the
Corder Plan to PR Investments, it did not supplement various discovery
responses that should have been supplemented to reflect the December 1, 1999
switch back to the Corder Plan.  








On December 2, 1999, the State filed a
motion for leave to file a first amended petition for condemnation.  The field notes attached to the amended
petition differed slightly from those attached to the original petition.  In both sets of field notes, the surveyor
first described a point of commencement. 
From this initial point of reference, the surveyor then directs the
reader to the Apoint of beginning,@ namely, a corner
of the .3407 acre tract sought to be condemned. 
Though the field notes differ on the exact path from the point of
commencement to the point of beginning, the Apoint of beginning@ is the same in
both sets of field notes.  Thus, the
property at issue is the same .3407 acre tract of land in both petitions.[2]  As with the original petition, nothing in the
amended petition referred to the Sparks Plan or the Corder Plan or required the
State to use either of these plans. 
Although the State filed its motion for leave to amend the petition the
day after it decided to go back to the Corder Plan, this motion did not relate
to this change in plans.

          On
December 7, 1999, at a hearing on the State=s motion for leave
to file its first amended petition for condemnation, the State=s attorney argued
that the filing of the amended petition

. . . would create no prejudice to the [Property
Owners].  There=s nothing about
the corrected field notes which would in any way materially affect any issue
that [the Property Owners] may raise as to compensation or any other issue with
respect to any relief that any party seeks in the lawsuit.








PR
Investments objected to the State=s motion for leave
and put on evidence showing that the Texas Department of Transportation had
abandoned its intention to implement the Sparks Plan and decided to implement
the Corder Plan, which would eliminate a dedicated lane for the deceleration
and acceleration of vehicles entering and leaving the remainder of PR
Investments=s property.  PR Investments argued that the State sought
leave to amend its petition in connection with its switch to the Corder Plan
and that the motion for leave should be denied because the Corder Plan
substantially restricted safe access to the property, thus decreasing the value
of PR Investments=s remaining property.  The trial court determined that the amended
petition had nothing to do with the change from the Sparks Plan to the Corder
Plan and that it simply made a technical correction to the field notes.  Therefore, the trial court granted the State=s motion for leave
to file its first amended petition.  

At the same hearing and immediately after the trial court
granted the State=s motion for leave to file the amended
petition, PR Investments made an oral motion to dismiss for lack jurisdiction.  PR Investments argued that the December 1,
1999 change by the State from the Sparks Plan to the Corder Plan deprived the
county court at law of jurisdiction over the trial de novo in the condemnation
action for the following stated reasons:

(1)       The State=s change
from the Sparks Plan to the Corder Plan deprives the Property Owners of greater
rights and imposes greater burdens on the remaining property than did the
Sparks Plan; and 

(2)       The
State=s change from the Sparks Plan to the
Corder Plan affects the damage issues and deprives the court of jurisdiction
because the compensation issues presented to the finder of fact in the trial de
novo must be the same as the compensation issues previously considered by the
three commissioners.  

In
support of its jurisdictional arguments, PR Investments cited Brown v. State, 984 S.W.2d 348, 349B50 (Tex. App.CFort Worth 1999, pet. denied).  Specialty Retailers joined in PR
Investments=s motion and pointed out that, as of the
December 7, 1999 hearing, the State had not given Specialty Retailers any
notice of the change from the Sparks Plan to the Corder Plan. 








Trial counsel for the State asserted the following
responses to the Property Owners= motions:

!       His advice to
the State Afrom a litigation perspective@ has always been to go back to the
Corder Plan. 

!       The State
decided to go back to the Corder Plan in part because it was the better and
safer design and in part based on his advice regarding litigation
considerations.  

!       The State=s failure to notify Specialty
Retailers of the change from the Sparks Plan to the Corder Plan was an
oversight.  

!       The change from the Sparks Plan to the
Corder Plan does not increase the burden on the Property Owners in any
compensable way.

The trial court then stated that the Property Owners= motions to
dismiss raised a material issue as to whether the Property Owners would suffer
a compensable, substantial, and material impairment of access, under either the
Sparks Plan or the Corder Plan.  The
trial court decided to hear evidence on these issues.  After hearing evidence for the remainder of
the day on December 7, 1999, the trial court recessed the hearing and
reconvened on December 8, 1999.  Before
hearing any further evidence, the trial court had an extended discussion with
counsel.  In the course of this
discussion, the trial court stated that it would not admit at trial any
evidence that the State intended to build the Project under the Corder Plan
even though the State had decided to follow the Corder Plan.  The trial court stated that it would allow
the State to elect among three options:

(1)     dismiss this
condemnation suit, pay all of the Property Owners= attorney=s fees and expenses, and file a
second condemnation action;

(2)     try this
condemnation action based on the Sparks Plan, construct the Project based on
the Corder Plan, and then face a likely inverse- condemnation action from the
Property Owners; or

(3)     decide to
construct the Project under the Sparks Plan and try this condemnation action
based on the Sparks Plan.[3]








The State=s counsel
responded that he would consult with his client over the lunch break as to
which of these three options the State wished to pursue.  After the lunch break, the State informed the
trial court and the Property Owners that it was still going to construct the
Project based on the Corder Plan and that it would not dismiss this
action.  The State asserted that the
trial court should try the case based on the Corder Plan, but that if the trial
court would not do so, then the State, under protest, would follow the second
option the trial court offered.  The
trial court stated that trial would proceed under the Sparks Plan.  The State then moved for a continuance, which
the trial court denied.  








PR Investments then made an oral motion for sanctions under
Rule 13 [4]
of the Texas Rules of Civil Procedure, arguing that the trial court should
sanction the State for going to trial on a fiction, because the State did not
intend to construct the Project under the Sparks Plan.  The trial court then immediately held an
evidentiary hearing on PR Investments=s motion for Rule
13 sanctions, hearing testimony from several witnesses.  After the court heard all testimony that the
parties offered on the Rule 13 sanctions motion, the State confirmed again that
it intended to proceed with the second option stated above, under protest,
having preserved its objections that the trial should not be based on the
Sparks Plan because the Project would not be based on that plan.  The trial court then stated that, although it
had given the State three options, it was now requesting the State to dismiss
its condemnation petition.  The State
declined the trial court=s invitation to dismiss its petition.            The
trial court then heard further argument, during which Specialty Retailers also
made an oral motion for Rule 13 sanctions, asserting the same basis as that
asserted by PR Investments.  The Property
Owners asserted that, under Rule 13, the trial court should dismiss the
condemnation petition and award the Property Owners all of the attorney=s fees, expenses,
and costs they had incurred in this case. 
Finally, the trial court stated that it would be a waste of resources to
have two actions C a condemnation action and then an
inverse-condemnation action.  The court
granted the Property Owners= motion for Rule
13 sanctions against the State, dismissed the case without prejudice, and
stated that it would award the Property Owners all of their attorney=s fees and
expenses. The trial court then stated that the Property Owners also would have
been entitled to the same sanctions under Rule 215.  PR Investments then reurged its prior motion
to dismiss for lack of jurisdiction and also moved to dismiss under section
21.0195(c) of the Texas Property Code based on the State=s alleged failure
to bring the condemnation proceeding properly. 
The trial court granted these motions. 
Then, PR Investments asked for the same relief under Rule 215, and the
trial court agreed.

After hearing evidence on the amount of the Property Owners= attorney=s fees and
expenses, the trial court signed a judgment that stated the following, among
other things:

!       The State did
not supplement any of its expert reports, deposition testimony of its
witnesses, or its interrogatory answers, responses to requests for production,
or responses to requests for disclosure to reflect the State=s decision on December 1, 1999, to
change from the Sparks Plan to the Corder Plan.

!       The State
admitted that it had not properly supplemented its discovery regarding the
change from the Sparks Plan to the Corder Plan.

!       The Corder Plan
Acould reasonably be construed to
impose a substantial, additional burden on the remainder Property not imposed
under the [Sparks Plan].@ 


!       AThe evidence presented reflected
that the [Corder Plan] renders access to the remainder Property unreasonably
deficient and unsafe.@ 


!       If the case
were to be tried based on the Afictitious@ Sparks Plan, it would encourage a multiplicity of suits C one to determine the Property
Owners= compensation based on the Sparks
Plan and another inverse-condemnation suit to determine compensation owed the
Property Owners based on the Corder Plan. 
AThis is unfair.@

!       The State has
never given the Property Owners a meaningful administrative hearing to
determine the compensation to which they are entitled based on the Corder Plan,
even though it is reasonable to conclude that the Corder Plan deprives the
Property Owners of greater rights and imposes greater burdens on the remainder
property than the Sparks Plan.  








!       Good cause
exists to sanction the State because A[t]he State=s trial position, the manner in which it has brought its
case to this Court to be tried, and the Petition upon which its case is based
are groundless, false, and made in bad faith as supported by the facts and
conduct of the State.@

!       The trial court lacks Ajurisdiction
to proceed to trial on the [Corder Plan] because it is reasonable to conclude
from the evidence and representations of counsel  that the [Corder Plan] deprived the Property
Owners of greater rights and imposed greater burdens on the remainder Property
than did the [Sparks Plan].@ 


!       The State=s change
from the Sparks Plan to the Corder Plan was a failure to strictly comply with
the Texas Property Code that deprived the Property Owners of a meaningful
administrative hearing before the commissioners.

!         The State Afailed to bring its cause of action to this Court properly and in
accordance with the Texas Property Code and the Texas Rules of Civil Procedure,
justifying dismissal of this case and sanctions in the form of attorney=s fees and expenses.@

!       The State=s insistence that it proceed to
trial on the Afictitious@ Sparks Plan justifies sanctions
under Rules 13 and 215 as well as under the trial court=s inherent powers.

!       Good cause
exists for the dismissal of the State=s condemnation petition without prejudice and the award to
the Property Owners of all of their attorney=s fees and expenses under section 21.0195,  Rules 13 and 215, the trial court=s inherent powers, and, to the
extent the State is considered an AAgency of the State,@ under Chapter 105 of the Texas Civil Practice and Remedies
Code. 

!       A direct
relationship exists between the State=s conduct and the sanctions imposed; the sanctions imposed
are just and not excessive.  The trial
court made sufficient efforts to avoid imposition of sanctions.  The trial court has a reasonable basis to
conclude that the State=s Afictitious claim@ lacked merit, and no lesser
sanction was available to the trial court.

!       The trial court
dismisses the condemnation action without prejudice, orders the State to
immediately surrender possession of the property in question, and orders a writ
of possession to immediately issue to this effect.








!       The trial court
orders the State to pay PR Investments $555,651.47, which consists of
$144,887.47 in expert witness fees and expenses and $410,764 as PR Investments=s reasonable and necessary attorney=s fees.  In the event the State does not appeal this
judgment, the trial court will give the State a credit of $236,511 against the
$410,764.  If the State appeals to the
court of appeals, but does not file a petition for review in the Texas Supreme
Court, then it will receive a credit of $91,250 against the attorney=s fees award.  In the event the State applies for a petition
for review and it is denied, then it will receive a credit of $54,750.

!       The trial court orders the State to pay
Specialty Retailers $95,000 in reasonable and necessary attorney=s fees and
expenses.  In the event the State does
not appeal this judgment, the trial court will give the State a credit of
$80,000 against the $95,000.  If the
State appeals to the court of appeals, but does not file a petition for review
in the Texas Supreme Court, then it will receive a credit of $40,000 against
the attorney=s fees award.  In the event the State applies for a petition
for review and it is denied, then it will receive a credit of $15,000.

The State appealed the trial court=s judgment to this
court.  On original submission, a panel
of this court affirmed.  See State v.
PR Investments, 132 S.W.3d 55 (Tex. App.CHouston [14th
Dist.] 2004) (withdrawn by today=s en banc
decision).  Having determined that en
banc review is justified under Texas Rule of Appellate Procedure 41.2(c), a
majority of the justices of this court have voted to rehear this case en banc.[5]  

                                          II. 
Issues and Analysis

A.      Did the trial
court lose its jurisdiction over the trial de novo in this condemnation action
because the State decided to construct the Project based on the Corder Plan
rather than the Sparks Plan?








In its judgment, the trial court concluded
that it lacked jurisdiction to conduct a trial de novo as to the Corder Plan
because the Corder Plan allegedly deprived the Property Owners of greater
rights and imposed greater burdens on the remaining property than the Sparks
Plan.[6]  The trial court also indicated that it lacked
jurisdiction based on its conclusion that the State=s change from the
Sparks Plan to the Corder Plan was a failure to strictly comply with  the Texas Property Code that deprived the
Property Owners of a meaningful administrative hearing before the
commissioners.[7]  In this regard, the trial court believed that
it lacked jurisdiction to conduct a trial de novo as to the Corder Plan based
on the notion that it only has the power to conduct a trial de novo as to the
specific plan that the condemnor intended to pursue at the time of the
commissioners= hearing. 
Therefore, the
trial court based its conclusion that it no longer had jurisdiction[8] on the following
propositions: 

(1)     The trial
court loses its jurisdiction over a trial de novo in a condemnation action if
the condemnor, without changing its petition, changes the specifics of its
planned project in a way that deprives the landowner of greater rights and
imposes greater burdens on the remaining property than did the former plans;
and 

(2)     Between the commissioners= hearing and the
trial de novo in a condemnation action, the trial court loses jurisdiction if a
condemnor changes the specifics of its planned project in a way that may affect
the damage issues, because the compensation issues presented to the finder of
fact in the trial de novo must be the same as the compensation issues
previously considered by the three commissioners.[9]








For
the reasons set forth below, we conclude that neither of these propositions is
correct.  

Chapter 21 of the Texas Property Code sets forth the
procedures for condemnation proceedings. See Tex. Prop. Code  Ann. ' 21.001, et seq.  In construing this statute, we must keep in
mind that the procedures for condemnation should be strictly followed and their
protections liberally construed for the benefit of landowners. See John v.
State, 826 S.W.2d 138, 140 (Tex. 1992). 
In liberally construing the condemnation statute, courts should give
full meaning to the statute=s language so as
to carry out the Texas Legislature=s manifest intent
in enacting the statute; however, courts cannot use this doctrine of liberal
construction as a license to create new requirements that go beyond the plain
meaning of the condemnation statute.  See
Coastal States Gas Producing Co. v. Pate, 309 S.W.2d 828, 831 (Tex.
1958).  

If a condemnor, such as the State of Texas in this case,
wants to acquire real property for public use but is unable to agree with the
owner of the property on the amount of damages, the condemnor may initiate a
condemnation proceeding by filing a petition that (1) describes the property to
be condemned, (2) states the purpose for which the entity intends to use the
property, (3) states the name, if known, of the owner of the property, and (4)
states that the condemnor and the property owner are unable to agree on the
damages.  See Tex. Prop. Code  Ann. ' 21.012 (Vernon
1984).  The Texas Supreme Court recently
decided that these statutory requirements are not jurisdictional.  See Hubenak v. San Jacinto Gas
Transmission Co., 141 S.W.3d 172, 183B84 (Tex.
2004).  The record in this case shows
that the State complied with all of these statutory requirements in both its
original and amended petitions.[10]  








The
State=s amended petition made a technical
correction to the property description. 
Nonetheless, the amended petition did not change the property to be
condemned, and the amended petition was not tied to the State=s decision to return to the Corder
Plan.  The original petition and the
amended petition make no reference to any specific plan the State intends to
pursue with the property sought to be condemned.  Though the State can elect to limit itself to
a specific plan in its condemnation petition, the condemnation statute does not
require the State to do so.  See
Coastal Indus. Water Auth. v. Celanese Corp. of America, 592 S.W.2d 597,
600B603 (Tex. 1979) (holding that
condemnor=s statement in petition that it
sought to acquire an easement Afor the transportation of water and other facilities and uses
incidental thereto or in connection therewith for Trinity Water Conveyance
System@ was a sufficient statement of the
purpose for which the condemnor intended to use the property under section
21.012(b)(2) and that no further specification of purpose was necessary,
although specifics can be added at the condemnor=s option if it wishes to limit its
rights in the condemned property).  In
this case, the State chose not to limit itself to the Sparks Plan or any other
plan in its petition. 








When
a condemnor files a condemnation petition, the judge of the court appoints Athree disinterested freeholders who
reside in the county as special commissioners to assess the damages.@ 
Tex. Prop. Code Ann. ' 21.014(a) (Vernon 1984).  These commissioners convene a hearing and
determine the value of the property condemned and any damage to the
remainder.  See id. '' 21.014B016 (Vernon 1984).  Any party may object to the special
commissioners= findings, and if there are
objections, the court shall cite the adverse party and conduct a trial de
novo.  See id. ' 21.018 (Vernon 1984).  The Texas Supreme Court has described the
period from the filing of the condemnation petition until the filing of any
objections to the commissioners= findings as an Aadministrative
proceeding@ that converts into a Anormal pending
cause@ when a party
files objections to the commissioners= findings.[11]
See Hubenak, 141 S.W.3d at 179.  

Texas
courts have held that the following alleged defects and errors regarding the
commissioners are not jurisdictional: 

!         improperly exchanging benches with
judge to which condemnation case was assigned so that judge who appointed
commissioners was not presiding judge in court to which condemnation case was
assigned, Pinnacle Gas Treating, Inc. v. Read, 160 S.W.3d 564, 566B67 (Tex. 2005) (stating that any such error was
curable by filing timely objection to trigger trial de novo);

!         failing to give preference in
appointing commissioners to persons on whom the parties agree, as required by
statute, Fort Worth & D.N. Ry. Co. v. Johnson, 84 S.W.2d 232, 234
(Tex. 1935) (stating that any such error was curable by trial de novo);

!         appointing commissioners who were not
disinterested, as required by statute, because they would be partially
responsible for paying the damages awarded in the condemnation proceeding, Gulf,
C. & S.F. Ry. Co. v. Ft. Worth & R.G. Ry. Co., 26 S.W. 54, 60 (Tex.
1894) (stating that any such error was curable by filing timely objection to
trigger trial de novo); 

!         the county court at law erroneously
quashing subpoenas, thus preventing evidence regarding damages from being heard
at the commissioners= hearing, Blasingame v. Krueger, 800 S.W.2d
391, 393B94 (Tex. App.CHouston
[14th Dist.] 1990, orig. proceeding) (stating that any such error was curable
by filing timely objection to trigger trial de novo); 

!         the failure of the commissioners to
hear evidence, City of Houston v. Bankers Mortg. Co., 514 S.W.2d 326,
328 (Tex. App.CHouston [1st Dist.] 1974, writ ref=d n.r.e.); and 

!         having only two of the three
commissioners appointed by the trial court hold the hearing and issue
findings.  City of Houston v. Stovall,
249 S.W.2d 246,  246B48 (Tex. Civ. App.CGalveston
1952, writ ref=d n.r.e.).








Nothing
in the condemnation statute prohibits the condemnor from changing its specific
plan for the property after the commissioners= hearing in a way that allegedly
prejudices the landowners.  See
Coastal Indus. Water Authority, 592 S.W.2d at 601 (stating that A[t]he petition in a condemnation
proceeding also serves as notice to the landowner of the damages to which he
may be entitled, and as the basis for evidence and issues on the question of
damages@). 
Nor does any statutory provision require the damage issues in the trial
de novo to be the same as those considered by the commissioners.  See Coastal Indus. Water Auth., 592
S.W.2d at 600B603; Blasingame, 800 S.W.2d at
393B94 (indicating that evidence at trial
de novo is not limited to the evidence introduced at commissioners= hearing and stating that the trial
de novo involves Atrying the matter anew; the same as if it had not been heard
before and as if no decision had been previously rendered@) (quotations omitted); Kennedy v.
City of Dallas, 201 S.W.2d 840, 841B42 (Tex. Civ. App.CDallas 1947, writ ref=d n.r.e.) (stating that trial de novo
in condemnation case is not confined to the evidence offered at the
commissioners= hearing).  Accordingly, the two legal bases upon which
the trial court apparently concluded that it lacked jurisdiction to conduct a
trial de novo regarding the Corder Plan have no basis in the condemnation
statute and are erroneous statements of law.[12]  Although this court liberally construes the
statutory protections the Legislature has provided to landowners in
condemnation actions, this liberal construction does not justify judicial
creation of protections that have no basis in the unambiguous language of the
condemnation statute.  See Coastal
States Gas Producing Co., 309 S.W.2d at 831.  













Furthermore,
the cases on which the Property Owners and our dissenting colleagues rely do
not require a contrary result.  The
Nelson v. State case deals with whether the agreed amendment to the
condemnor=s petition deprived the trial court
of jurisdiction by adding property to the land sought to be condemned.  See 334 S.W.2d 788, 790B92 (Tex. 1960).  The Nelson court held that, under the
circumstances of that case, the amendment to the petition did not deprive the
trial court of jurisdiction over the trial de novo.  See id.  The statements on which the Property Owners
and the dissenters rely are obiter dicta.[13]  See id. at 791.  The statement that the parties may not avoid
a hearing by the commissioners does not conflict with the analysis in the
instant case.  The commissioners in this
case held a hearing based on the petition filed by the State, and the commissioners
issued their findings.  The parties did
not avoid a hearing by the commissioners. 
This statement from Nelson does not mean that the damage evidence
and arguments in the trial de novo must be the same as in the commissioners= hearing, nor does it mean that the
change to the Corder Plan deprives the trial court of jurisdiction.  Although Nelson states in obiter
dictum that the condemnation statute permits the court to act only after
damages have been determined by three disinterested freeholders, to the extent Nelson
implies that this is a jurisdictional prerequisite, this dictum is contrary to
prior Texas Supreme Court precedent that our high court has recently
reaffirmed.  See Pinnacle Gas
Treating, Inc., 160 S.W.3d at 567 (citing Gulf, C. & S.F. Ry. Co. as
good law); City of Bryan v. Moehlman, 282 S.W.2d 687, 688B89 (Tex. 1955) (stating that
condemnation proceeding was not void for lack of jurisdiction even if
commissioners were not disinterested and relying on Gulf, C. & S.F. Ry.
Co.); Gulf, C. & S.F. Ry. Co., 26 S.W. at 60 (holding that trial
court did not lose jurisdiction over trial de novo in condemnation action, even
if the commissioners were not disinterested because they were partially
responsible for paying the damages awarded in the condemnation
proceeding).  The Nelson court
correctly states that the trial court does not have original jurisdiction over
condemnation actions and that it does not have unlimited power to enlarge the
subject matter of a condemnation case by allowing amendments to the pleadings,
but these statements do not affect the analysis in this case.  The amendment to the State=s petition was a technical one that
had nothing to do with the Corder Plan, and the trial court would not have been
expanding the subject matter of the condemnation case by allowing evidence of
the Corder Plan at trial.

The
Brown v. State decision deals only with the issue of whether the trial
court abused its discretion in granting the condemnor leave to amend its
petition in a case in which the condemnor, unlike the State in the instant
case, chose to specify details of its plans in its condemnation petition.  See 984 S.W.2d 348, 349B50 (Tex. App.CFort Worth 1999, pet. denied).  Further, whereas the Property Owners and the
dissenters seek to limit the issues in the de novo trial to the evidence and
the specific plan before the commissioners at their hearing, Brown states
that A[t]he trial court=s appellate jurisdiction is limited
to the parties and issues involved in the administrative proceeding before the
special commission, as set out in the condemning authority=s petition which is the only pleading required
at that time.@ 
Brown, 984
S.W.2d at 350 (emphasis added).








The
Puett case does state in dicta that the trial de novo in condemnation
cases is limited to the issues involved in the commissioners= hearing and that the trial court can
only review matters that were properly before the commissioners.  See Board of Regents of Univ. of Tex. Sys.
v. Puett, 519 S.W.2d 667, 670B71 (Tex. Civ. App.CAustin 1975, writ ref=d n.r.e.).  These obiter dicta are incorrect.  For example, the trial court in a trial de
novo has the power to determine whether the condemnor has the right to condemn
the property; whereas the commissioners are limited to issuing findings as to
the amount of compensation they believe should be awarded for the
condemnation.  See Amason v. Natural
Gas Pipeline Co., 682 S.W.2d 240, 242 (Tex. 1984).  Likewise, the evidence at the trial de novo
is not limited to the evidence introduced at the commissioners= hearing.  See Blasingame, 800 S.W.2d at 393B94; Kennedy, 201 S.W.2d at 841B42. 
Also, despite the fact that the trial will involve significantly
different compensation issues from the commissioners= hearing, the county court at law
maintains jurisdiction to try a condemnation case, even after the condemnor has
amended its petition to seek condemnation of a significantly smaller portion of
the land previously sought to be condemned, and even though the commissioners= hearing and findings were based on
the larger piece of land.  See Board
of Regents of the Univ. of Houston Sys. v. FKM Partnership, Ltd., CS.W.3dC,C, 2005 WL 851178, at *3B4 (Tex. App.CHouston [14th Dist.] Apr. 14, 2005,
no pet. h.).  The obiter dicta from Puett
are not persuasive as to the issues involved in the instant case.

Contrary
to the Property Owners= arguments and the trial court=s legal conclusions, the condemnation
statute does not (1) prohibit the condemnor from changing its specific plan for
the property after the commissioners= hearing in a way that allegedly
prejudices the landowners, or (2) require the damage issues in the trial de
novo to be the same as those considered by the commissioners.  The timing of the State=s change from the Sparks Plan to the
Corder Plan and the State=s failure to supplement various discovery responses may have
raised issues as to whether the trial court should assess discovery sanctions
against the State, but the trial court was not divested of its jurisdiction
based on this change.  Accordingly, we
hold that the trial court did not lose jurisdiction over the trial de novo in
this condemnation action, and therefore the trial court erred in ruling that it
lacked jurisdiction.

B.      Did the trial court err in dismissing the
condemnation action under section 21.0195 of the Texas Property Code based on
its conclusion that the State failed to bring the condemnation proceeding
properly?








In its judgment, the trial court also dismissed without
prejudice the condemnation action and awarded the Property Owners all of their
attorney=s fees and
expenses under section 21.0195(c) of the Texas Property Code.[14]
 See Tex. Prop. Code Ann. ' 21.0195(c) (Vernon Supp. 2004).  This statutory provision allows a trial court
to dismiss a condemnation proceeding and award attorney=s fees and expenses to the property
owners if the Texas Department of Transportation fails to bring the proceeding
properly.[15]  See id.  The asserted ways in which the State failed
to bring the condemnation proceeding properly and in accordance with the Texas
Property Code are the same grounds upon which the trial court concluded it
lacked jurisdiction.  The State asserts
that it brought this condemnation proceeding properly.[16]
As discussed above, the State complied with the applicable sections of the
Texas Property Code.  Therefore, the
trial court erred in determining that the State failed to bring this proceeding
properly and in dismissing the condemnation action and awarding attorney=s fees and expenses under section
21.0195(c).

C.      Did the trial court err in assessing
sanctions under Rule 13?

The trial court also dismissed the State=s condemnation
proceeding without prejudice and awarded the Property Owners all of their
attorney=s fees and
expenses under Rule 13.  This rule,
entitled AEffect of Signing of Pleadings, Motions
and Other Papers; Sanctions,@ states in
pertinent part:








The
signatures of attorneys or parties constitute a certificate by them that they
have read the pleading, motion, or other paper; that to the best of their
knowledge, information, and belief formed after reasonable inquiry the
instrument is not groundless and brought in bad faith or groundless and brought
for the purpose of harassment.  Attorneys
or parties who shall bring a fictitious suit as an experiment to get an opinion
of the court, or who shall file any fictitious pleading in a cause for such a
purpose, or shall make statements in pleading which they know to be groundless
and false, for the purpose of securing a delay of the trial of the cause, shall
be held guilty of a contempt.  If a
pleading, motion or other paper is signed in violation of this rule, the court,
upon motion or upon its own initiative, after notice and hearing, shall impose
an appropriate [sanction] . . . . No sanctions under this rule may be imposed
except for good cause, the particulars of which must be stated in the sanction
order.  AGroundless@ for purposes of this rule means no
basis in law or fact and not warranted by good faith argument for the
extension, modification, or reversal of existing law.  

Id.  

We review a sanctions order under Rule 13 for an abuse of
discretion.  See Elkins v.
Stotts-Brown, 103 S.W.3d 664, 667 (Tex. App.CDallas 2003, no
pet.).  When determining whether Rule 13
sanctions are proper, the trial court must examine the circumstances existing at
the time the litigant filed the pleading. 
See id. at 668.  Rule 13
requires the trial court to base sanctions on the acts or omissions of the
party or counsel.  See Tex. R. Civ. P. 13; Elkins, 103
S.W.3d at 668.  The trial court must
examine the facts available to the litigant and the circumstances existing at
the time the pleading was signed.  See
Elkins, 103 S.W.3d at 668.  In
this context, bad faith is not simply bad judgment or negligence; rather, it is
the conscious doing of a wrong for dishonest, discriminatory, or malicious
purposes.  See id. at 669.  Harassment in the context of Rule 13 means
that the pleading was intended to annoy, alarm, and abuse another person.  See id.  Courts must presume that papers are filed in
good faith, and the party moving for sanctions bears the burden of overcoming
this presumption.  See id. at 668.








The trial court based its Rule 13 sanctions on its finding
that A[t]he State=s trial position,
the manner in which it has brought its case to this Court to be tried, and the
Petition upon which its case is based are groundless, false, and made in bad
faith as supported by the facts and conduct of the State.@  The trial court also stated that Rule 13
sanctions are justified by the State=s insistence that
it proceed to trial on the Afictitious@ Sparks Plan,
knowing that it would base the Project on the Corder Plan.  The trial court stated that this
insistence  constitutes bad faith and
harassment, justifying sanctions under Rule 13.[17]


First, the trial court based its Rule 13 sanctions in part
on the State=s trial position, the manner in which it
prosecuted this action, and its acceptance of the trial court=s invitation to go
to trial on the Sparks Plan even though the State would build the Project based
on the Corder Plan.  To this extent, the
trial court abused its discretion because Rule 13 sanctions are not based on a
party=s conduct during
the prosecution of the action; rather, they are based on the signing and filing
of pleadings in violation of the duties imposed by Rule 13.  See Elkins, 103 S.W.3d at 668B69. 

To base the sanctions on the signing of the pleadings, the
trial court had to find at least one of the following:

(1)     That, at the
time State=s counsel, Anthony J. Blazi, signed
the original condemnation petition, to the best of his knowledge, information,
and belief formed after reasonable inquiry, the petition was groundless and
brought in bad faith or groundless and brought for the purpose of harassment;
or

(2)     That, at the
time State=s counsel, Elizabeth Elleson,
signed the amended condemnation petition, to the best of her knowledge,
information, and belief formed after reasonable inquiry, the petition was
groundless and brought in bad faith or groundless and brought for the purpose of
harassment.  

See id.








The trial court did not state either of the above as a
basis for its Rule 13 sanctions, and the record contains no evidence that would
support any such findings.[18]  As noted above, neither petition limited the
State to any particular plan.  Further,
the main basis of the sanctions in general appears to have been the State=s acceptance of
the trial court=s invitation to go to trial based on the
Sparks Plan, even though the State would construct the Project based on the
Corder Plan.  Neither this conduct nor
the Corder Plan have any connection with the signing and filing of the State=s petitions and
the allegations contained therein.  In
any event, after reviewing the evidence in the record, we find no evidence that
either the original petition or the amended petition was groundless and brought
in bad faith or groundless and brought for the purpose of harassment.[19]  See Elkins, 103 S.W.3d at 668B69 (reversing Rule
13 sanctions for lack of evidence).

Further, without regard to the certificates made under Rule
13 by the signers of the pleadings, Rule 13 also provides for sanctions against
attorneys or parties who bring a fictitious suit or who file any fictitious
pleading as an experiment to get an opinion of the court.  Although the trial court described the Sparks
Plan and the State=s condemnation action as Afictitious,@ there is no
evidence or finding by the trial court that any party or attorney filed this
condemnation action or any pleading herein as an experiment to get an opinion
from the court.  Therefore, the trial
court erred to the extent it assessed Rule 13 sanctions on this basis.[20]








In sum, no evidence in the record supports the trial court=s finding of a
Rule 13 violation or the assessment of Rule 13 sanctions against the State in
this case.  See Elkins, 103 S.W.3d
at 668B69.  Accordingly, the trial court erred to the
extent it dismissed the State=s condemnation
petition and ordered the State to pay the Property Owners= attorney=s fees and
expenses under Rule 13.  

D.      Did the trial
court err in assessing sanctions under the Frivolous Claims Act?

The trial court also awarded relief
against the State under the Frivolous Claims Act, to the extent the State is a AState agency@ thereunder. See
Tex. Civ. Prac. & Rem. Code Ann.
' 105.001, et
seq.  Because the State asserts in
its condemnation petition that it brings the condemnation action by and through
the Texas Transportation Commission, it would appear that the State qualifies
as a AState agency@ for the purposes
of the Frivolous Claims Act.  See Tex. Civ. Prac. & Rem. Code Ann. ' 105.001(3)
(defining AState agency@ to include an
executive-branch commission created by a Texas statute that has statewide
jurisdiction).      








To obtain sanctions under the Frivolous Claims Act, the
Property Owners had to file a written motion alleging that the State=s claim is
frivolous, unreasonable, or without foundation. 
See Tex. Civ. Prac. &
Rem. Code  Ann. ' 105.003(a).  The Property Owners never filed a written
motion for sanctions in the trial court, and the trial court overruled the
State=s objection that
the motion for sanctions was not in writing. 
On this basis alone, the trial court abused its discretion in assessing
sanctions under the Frivolous Claims Act. 
Furthermore, the Texas Supreme Court has held that relief under the
Frivolous Claims Act is not available simply because a state agency acts
frivolously, unreasonably, or without foundation.  Brainard v. State, 12 S.W.3d 6, 30
(Tex. 1999), disapproved of on other grounds by Martin v. Amerman, 133
S.W.3d 262, 267B68 (Tex. 2004).  Rather, relief is proper only when the state
agency asserts a claim that is Afrivolous,
unreasonable, or without foundation.@  Id. 
  A claim may be deemed
unreasonable under the Frivolous Claims Act when the totality of the tendered
evidence fails to demonstrate any arguable basis for the claim.  Id. 
For the reasons stated above, there is no evidence in the record to show
that, under the Frivolous Claims Act, the State=s condemnation
claim is frivolous, unreasonable, or without foundation.  See id. (reversing and rendering as to
the trial court=s award of relief under the Frivolous
Claims Act).  Accordingly, the trial
court erred to the extent it dismissed the State=s condemnation
petition and ordered the State to pay the Property Owners= attorney=s fees and
expenses under the Frivolous Claims Act. 


E.      Did the trial
court err in assessing sanctions under Rule 215 and under the court=s inherent power?

The decision to sanction a litigant for
discovery abuse lies within the discretion of the trial court.  Thompson v. Davis, 901 S.W.2d 939, 940
(Tex. 1995).  Rules 215.2 (b) and 215.3
allow the trial court to impose sanctions for failure to comply with proper
discovery requests or for abuse of the discovery process.  See Tex.
R. Civ . P. 215(2)(b).  Legitimate
purposes of discovery sanctions include: (1) securing compliance with discovery
rules; (2) deterring other litigants from similar misconduct;  and (3) punishing violators.  Arkla, Inc. v. Harris, 846 S.W.3d 623,
628B29 (Tex. App.CHouston [14th
Dist.] 1993, orig. proceeding).  








Discovery sanctions must be just.  Tex.
R. Civ. P. 215(2)(b); Thompson, 901 S.W.2d at 940.  Therefore, the trial court=s discretion is
limited in at least the following ways: (1) there must be a direct relationship
between the offensive conduct and the sanction imposed;  and (2) the sanction imposed must not be
excessive.  See Arkla, Inc., 846
S.W.3d at 628. In other words, the punishment should fit the crime; the
sanction must be directed against the abuse and toward remedying the prejudice
caused to the innocent party.  See id;  Thompson, 901 S.W.2d at 940.  All of the foregoing requirements also apply
to a trial court=s exercise of its inherent power to
sanction.  Greiner v. Jameson, 865
S.W.2d 493, 499 (Tex. App.CDallas 1993, writ
denied).  The trial court recognized that
these standards apply to its sanctions ruling. 
The trial court expressly stated that dismissing the action without prejudice
and awarding the Property Owners all of their attorney=s fees and
expenses is a just sanction that is not excessive.  The trial court further stated that these
sanctions bear a direct relationship to the State=s conduct and that
there is no lesser sanction available. 
Based on the statements in the trial court=s judgment, the
following is all of the possible conduct by the State that may have been the
basis for the sanctions in question:

!       The State=s decision on December 1, 1999, to
switch from the Sparks Plan back to the Corder Plan.[21]

!       In violation of
the discovery rules, the State did not supplement any of its expert reports,
deposition testimony of its witnesses, or its interrogatory answers, responses
to requests for production, or responses to requests for disclosure to reflect
the State=s decision to change from the
Sparks Plan to the Corder Plan.

!       If the case
were to be tried based on the Afictitious@ Sparks Plan, it would encourage a multiplicity of suits C one to determine the Property
Owners= compensation based on the Sparks
Plan and another inverse-condemnation suit to determine compensation owed the
Property Owners based on the Corder Plan. 
AThis is unfair.@

!       AThe State=s trial position, the manner in
which it has brought its case to this Court to be tried, and the Petition upon
which its case is based are groundless, false, and made in bad faith . . . .@[22]

!       The State=s Ainsistence that it proceed to trial
on the fictitious [Sparks Plan].@








As discussed above, the State=s decision to
change from the Sparks Plan to the Corder Plan did not cause the State=s condemnation
action to violate the Texas Property Code. 
The trial court incorrectly states that the State insisted on proceeding
to trial on the Sparks Plan even though the State actually intended to use the
Corder Plan.  The State did not insist on
such a trial.  Rather, the State wanted
to go to trial on the plan that it actually intended to use C the Corder Plan C after a
continuance to allow the Property Owners additional discovery regarding the
Corder Plan.  The State also indicated to
the trial court that it would be appropriate for the trial court to order the
State to pay the Property Owners for the increased expenses, including attorney=s fees and expert
fees, caused by the switch from the Sparks Plan to the Corder Plan.[23]  The State has reiterated this position on
appeal.

Although the trial court indicated at one
point that a continuance might be appropriate, it denied the State=s motion for continuance
after the Property Owners objected.  In
any event, the State accepted one of the three options offered by the trial
court, under protest that it wanted a trial based on the Corder Plan.  The State did not insist on a trial based on
the Sparks Plan.  Although the State did
refuse to nonsuit this action, it had the right to do so, and, as discussed
above, the trial court had no basis to dismiss this action under section
21.0195(c).   








In its appellate brief, PR Investments
implies that the State engaged in improper conduct because (1) the State urged
the trial court to go to trial based on the Sparks Plan, even though all
parties knew that the construction would be based on the Corder Plan, and (2)
the State knew that PR Investments would not be allowed to recover its
additional damages in a subsequent inverse-condemnation action.   See City of LaGrange v. Pieratt, 175
S.W.2d 243, 246 (Tex. 1943) (holding that after condemnation action, landowners
cannot recover in subsequent suit any damages that reasonably could have been
foreseen at the time of the prior condemnation action).  The trial court, however, did not list any
such alleged knowledge or motive by the State as part of the State=s allegedly sanctionable
conduct.  There is no evidence in the
record that the State=s
attorney was aware of the Pieratt rule. 
Furthermore, the Property Owners said nothing to the trial court about
such potential problems with a subsequent inverse-condemnation action.  In fact, counsel for PR Investments indicated
that such an action was available:

[trial court]:                               [I]f they [the
State] do in fact not go forward with that plan [Sparks Plan] then obviously
you=ve got your inverse suit.

[PR Investments=s counsel]:        Exactly, we do, but if representation is
being made at the time we go to trial that they=re going to do
something other than that which they represented they were going to do, then we=re going to trial
on a fiction, as [counsel for the State] correctly pointed out, that we=re going to trial
based on something the Highway Department is not going to do.

The Property Owners drafted, and approved
as to form and substance, the proposed judgment that the trial court eventually
signed.[24]  This judgment affirmatively states that any
additional damages caused by the Corder Plan would have to be determined in a
subsequent inverse-condemnation action. 
In sum, the record indicates that, during the proceedings in the trial
court, the parties=
counsel and the trial court were not aware of the Pieratt rule. 








Although the trial court did not consider
the effect of the Pieratt rule, it appears that the inefficiency of
having two suits, which the trial court mentioned in its judgment, would have
been mitigated by the fact that the Pieratt rule would have barred the
second action.  Of course, there still
would be issues of fairness.[25]  However, this unfairness does not constitute
sanctionable conduct by the State, and it could have been mitigated by a
sanction that ordered the State to pay the increase in expenses, including
attorney=s fees and expert fees,
caused by the switch from the Sparks Plan to the Corder Plan.  In any event, the unfairness of an option
proposed by the trial court should not be the basis for sanctioning a party who
accepts that option at the trial court=s
invitation.

The trial court stated there was a relationship between the State=s conduct, on the one hand, and, on
the other hand, the trial court=s dismissal of the condemnation action, which would force the
State to start all over again, and the trial court=s order that the State pay more
than $650,000 as a sanction.  The record,
however, does not show that the State=s failure to properly supplement its discovery responses or
any other sanctionable conduct is directly related to these sanctions.  Therefore, we conclude that the sanctions
imposed by the trial court under Rule 215 and under its inherent power lacked a
direct relationship with the State=s sanctionable conduct. 
See Thompson, 901 S.W.2d at 940 (holding trial court abused its
discretion in assessing unjust discovery sanction which was not directed at the
allegedly sanctionable conduct and remedying the prejudice caused by that
conduct);  Arkla, Inc., 847 S.W.2d
at 628 (holding trial court abused its discretion in assessing unjust sanction
of early trial setting based on discovery abuse by one defendant relating to
document production, given that sanction did not directly relate to the
misconduct and that it prejudiced other defendants who had not engaged in
misconduct).

The trial court stated that no lesser sanction was available; however, the
trial court did not explain why it could not have imposed the lesser sanction
suggested by the State C  ordering the State to
pay the increase in expenses caused by the switch from the Sparks Plan to the
Corder Plan.  On this record, we also
conclude the sanctions imposed by the trial court were excessive.  See Fethkenher v. Kroger Co., 139 S.W.3d
24, 34B37 
(Tex. App.CFort Worth  2004, no
pet.) (holding that discovery sanctions under Rule 215 were excessive); In
re Supportkids, Inc., 124 S.W.3d 804, 807B08 (Tex. App.CHouston [1st Dist.] 2003, orig.
proceeding) (holding that discovery sanctions were excessive).  

Accordingly, we conclude the trial court abused its discretion because its
sanctions under either Rule 215 or its inherent power to sanction were unjust
and excessive.








                                       III. 
Conclusion

The trial court did not lose jurisdiction over this condemnation
proceeding because the State decided shortly before trial to build the Project
based on the Corder Plan rather than the Sparks Plan.  Because the State brought this condemnation
proceeding properly, the trial court erred in dismissing this proceeding and
awarding attorney=s fees and expenses under section 21.0195 of the Texas
Property Code.  The trial court abused
its discretion by finding a violation and assessing sanctions under Rule 13 and
the Frivolous Claims Act.  Although the
State may have engaged in conduct warranting discovery sanctions, the sanctions
actually assessed by the trial court were unjust and excessive. Therefore, the
trial court abused its discretion in assessing the sanctions in question under
Rule 215 and under its inherent power. 
Because the trial court=s
errors resulted in the erroneous dismissal of the State=s
condemnation action and the award of unjust and excessive sanctions, these
errors probably caused the rendition of an improper judgment. 
Accordingly, we sustain the State=s appellate issues, reverse the trial court=s judgment, and remand for further proceedings consistent with
this opinion, including but not limited to the trial court=s consideration of what amount of monetary sanctions
against the State would be just and not excessive.[26]  

 

 

 

/s/      Kem Thompson Frost

Justice








 

Judgment rendered and Majority and
Dissenting En Banc Opinions filed October 13, 2005. 

 

En banc (Justices Yates, Hudson,
Fowler, and Guzman join the Majority Opinion; Chief Justice Hedges and Justices
Edelman and Seymore join the Dissenting Opinion.)  (Anderson, J., dissenting.)

 

 











[1]  Unless
otherwise specified, all statutory citations in this opinion to sections are to
sections of the Texas Property Code.





[2]  In both the
original and amended petitions the point of commencement is the same, namely, Aa 1-inch iron pipe found marking the southeasterly
corner of a 5.54 acre tract of land conveyed to the City of Houston by deed
dated November 17, 1978 and recorded in Clerk=s File
No. F-859575 of the Harris County Deed Records.@  The two petitions then describe a slightly
different course of bearings and distances to reach a Apoint of beginning,@ namely,
the most southeasterly corner of the .3407-acre tract sought by the State.  This Apoint of
beginning@ is the same in both petitions,  i.e., a 5/8-inch iron rod set on the
same Texas State Plane Coordinates. 
Thereafter, the field notes describing the .3407-acre tract are
identical in all material respects in the original and amended petitions.





[3]  The trial
court correctly noted that it could not force the State to build the Project
according to the Sparks Plan.





[4]  Unless
otherwise specified, all citations in this opinion to rules are to the Texas
Rules of Civil Procedure.





[5]    Five amici
curiae have appeared in support of the State=s motion
for en banc reconsideration C (1) Harris County, Texas, (2) Metropolitan Transit
Authority of Harris County, Texas, (3) North Harris County Regional Water
Authority, (4) Southwestern Bell Telephone, L.P., and (5) Centerpoint Energy
Houston Electric, L.L.C.  These five
acquiring authorities, consisting of both governmental bodies and private
entities vested by the legislature with the power of eminent domain, argue that
the panel=s opinion is contrary to longstanding precedents from
this court and the Texas Supreme Court and that, if left intact, the impact of
the panel=s opinion would extend well beyond the facts of this
case.





[6]  See
Conclusion 9 in the trial court=s judgment.





[7]  See
Conclusion 10 in the trial court=s
judgment.





[8]  The en banc
dissenting opinion finds significance in a purported distinction between a loss
of Asubject matter jurisdiction@ on the one hand and a loss of Ajurisdiction,@ or Aappellate jurisdiction@ or Apower to act@ on the
other hand.  Whichever term is used, the
trial court loses its power to do anything other than dismiss the case, and the
proceedings are void, with any judgment subject to collateral attack.  See University of Tex. Southwestern Med.
Ctr. at Dallas v. Loutzenhiser, 140 S.W.3d 351, 358B59 (Tex. 2004) (referring interchangeably to Asubject matter jurisdiction,@ Ajurisdiction,@ and Apower to act@).  This opinion refers to an alleged loss of Ajurisdiction.@  





[9]  The en banc
dissenting justices agree with this second proposition, and they appear to
agree with the first proposition as well. 
See post, op. at p. 6 (stating that Aa trial court in an eminent domain proceeding lacks
the power to enlarge the subject matter of the cause and is limited to a review
of those damages issues the special commissioners considered@ and stating that Anone of
the cited cases [in the majority opinion] involve a situation in which the
condemnor made substantial and prejudicial changes to its condemnation plans
after presenting those plans to the special commissioners@).





[10]  The trial
court did not conclude that the State failed to comply with section 21.012=s Aunable to agree@
requirement.  However, PR Investments
refers in various parts of its appellate briefing to the Agood faith@
component of this requirement.  See
Hubenak, 141 S.W.3d at 185B87 (citing cases that require condemnor to negotiate
in good faith or make a bona fide effort in conjunction with the Aunable to agree@
requirement).  The Texas Supreme Court
has rejected this good-faith analysis, and has held that it is not part of the Aunable to agree@
requirement.  See id; Malcomson
Road Util. Dist. v. Newsom, __ S.W.3d __, __, 2005 WL 1189630, at *14 (Tex.
App.CHouston [1st Dist.] May 20, 2005, no pet. h.).  In any event, even under the former
good-faith analysis, the time frame for this analysis was before the
condemnation petition was filed.  See
Hubenak, 141 S.W.3d at 180B81.  Therefore, even the former analysis would not
apply to the State=s return to the Corder Plan, a decision the State made
more than two years after filing its condemnation petition.





[11]  In this
opinion, we refer to this second part of the condemnation proceedings as the
trial de novo.  This nomenclature is
consistent with the statutory language and the language used by the Hubenak court.  However, even if we instead used the term Ade novo appeal,@ it would
not change the analysis.





[12]  Even presuming
for the sake of argument that the condemnation statute did contain the two
requirements mentioned above, these requirements still would not be
jurisdictional.  See Pinnacle Gas
Treating, Inc., 160 S.W.3d at 566B67; Hubenak,
141 S.W.3d at 175B84; Fort Worth & D.N. Ry. Co., 84 S.W.2d at
234; Gulf, C. & S.F. Ry. Co., 26 S.W. at 60; Stovall, 249
S.W.2d at 246B48.  





[13]  Our dissenting
colleagues assert that the statements on which they rely from Nelson are
judicial dicta rather than obiter dicta. See post, op. at p. 6 n.5.  Under the standard for distinguishing between
obiter dicta and judicial dicta, we respectfully disagree.  See Edwards v. Kaye, 9 S.W.3d 310, 314
(Tex. AppCHouston [14th Dist.] 1999, pet. denied). 





[14]  See
Conclusions 11 and 17 in the trial court=s
judgment.  The trial court awarded
attorney=s fees and expenses under Athe Texas Property Code, including ' 21.0195.@  On appeal, the only part of the Texas
Property Code on which the Property Owners rely to justify this part of the
trial court=s judgment is section 21.0195(c).  A review of the Texas Property Code shows
that this section is the only part of the statute that arguably would apply to
the facts of this case. See Tex.
Prop. Code. Ann. ' 21.0195(c) (Vernon Supp. 2004). 





[15]  The record
reflects that this condemnation proceeding involves the Texas Department of
Transportation, and we presume for the sake of argument that section 21.0195
applies.  See Tex. Prop. Code. Ann. ' 21.0195(a) (stating that section 21.0195 applies only
to dismissals of condemnation proceedings that involve the Texas Department of
Transportation).    





[16]  The issue of
whether the trial court erred in dismissing this case based on its
determination that the State failed to comply with the Texas Property Code is a
subsidiary question that is fairly included in the two issues presented in the
State=s opening brief on appeal.  See Tex.
R. App. P. 38.1(e).  In this
brief, the State noted that the trial court dismissed in part based on its
conclusion that the State had failed to strictly comply with the condemnation
procedures of the Texas Property Code. 
The State also argued that the trial court erred in determining that the
State failed to bring this proceeding properly and in awarding expenses and
attorney=s fees under section 21.0195(c).  In applying the Texas Rules of Appellate
Procedure, including Rule 38.1, the Texas Supreme Court has instructed courts
of appeals to construe these procedural rules reasonably, yet liberally, so
that a party=s right to appeal is not compromised by imposing
requirements that are not absolutely necessary to effect the purpose of the
rule in question.  Republic
Underwriters Ins. Co. v. Mex-Tex, Inc., 150 S.W.3d 423, 427 (Tex. 2004).





[17]  The trial
court also stated in its judgment that it had a reasonable basis to conclude
that the State=s Afictitious claim@ lacked
merit.  However, any alleged lack of
merit in the State=s condemnation petition is not sufficient to justify
Rule 13 sanctions.  See Elkins,
103 S.W.3d at 668  (stating that a
pleading=s lack of merit is not a sufficient basis for Rule 13
sanctions).





[18]  It should be
noted that the trial court had a duty to set forth expressly and with
particularity the acts or omissions on which it based its Rule 13
sanctions.  See Jimenez v.
Transwestern Prop. Co., 999 S.W.2d 125, 130 (Tex. App.CHouston [14th Dist.] 1999, no pet.). 





[19]  Perhaps in tacit recognition of
this reality, after finding that the State had violated Rule 13, the trial
court dismissed the State=s petition without prejudice to the
refiling of a new condemnation action.  We need not and do not address whether it can ever be
appropriate to find that Rule 13 has been violated and then to dismiss the
petition without prejudice to refiling.





[20]  Making
statements known to be groundless and false in a pleading, for the purpose of
securing a delay of the trial of the cause, is another potential basis for Rule
13 sanctions.  However, there is no
contention that this ground applies here, nor is there any evidence or finding
by the trial court to support this ground.





[21]  This decision
would not constitute discovery abuse; however, it might be argued that the
trial court could exercise its inherent power to sanction this conduct, and we
will presume so for the sake of argument.





[22]  Again, this
conduct would not appear to be a violation of any discovery rule, but we
presume for the sake of argument that it could have been considered as a basis
of sanctions under the trial court=s
inherent power.





[23]  On appeal, PR
Investments asserts that accepting the State=s offer
in this regard and ordering the State to pay these attorney=s fees would not have been a meaningful sanction because
the State already had an obligation to pay these fees based on the alleged
prejudice to the Property Owners caused by the State=s amendment of its condemnation petition. As noted
above, the amendment of this petition did not relate to the change to the
Corder Plan.  Further, the trial court
granted the State=s motion for leave to file this amended petition and
awarded no sanctions or damages based on any alleged prejudice to the Property
Owners arising therefrom.  In fact, if it
had found such prejudice, the trial court would not have granted the State=s motion for leave to amend.





[24]  The trial
court made handwritten modifications to this proposed judgment before signing
it, but these modifications are not relevant here.





[25]  PR Investments asserts it is entitled to significantly
more damages under the Corder Plan than under the Sparks Plan.  On remand, the Property Owners are free to
assert their arguments regarding their damages under the Corder Plan.





[26]  Our dissenting
colleagues conclude that the amount of increased expenses, including attorney=s fees and expert fees, caused by the switch from
the Sparks Plan to the Corder Plan equals the total amount of the Property
Owners= expensesCmore than
$650,000. 
Sections 21.019 and 21.0195 of the Property Code do not provide a
cognizable basis for equating these two items because neither of these sections
applies here.  The trial court never
inquired into the amount by which the Property Owners= expenses would be increased by the switch from
the Sparks Plan to the Corder Plan; rather, the trial court simply found the
total amount of the Property Owners= expenses for the
entire case under section 21.0195(c).  It
would not be appropriate for this court to make factual findings, especially
regarding sanctions that the trial court has not yet assessed but may assess in
the future.  Furthermore, we cannot
presume that the change in plans rendered useless all of the work performed by
the Property Owners= attorneys and experts before December 1,
1999.