Rogers SOUTH, Appellant,

v.

TEXAS EASTERN TRANSMISSION
CORPORATION, Appellee.

No. 13564.

Court of Civil Appeals of Texas.

San Antonio.

Feb. 17, 1960.

William H. Shireman, Corpus Christi, for appellant.

Keys, Russell, Keys & Watson, William H. Keys, Corpus Christi, for appellee.

MURRAY, Chief Justice.

This suit was instituted in the County Court of Nueces County, Texas, by Texas Eastern Transmission Corporation against Rogers South, seeking a right-of-way easement for a natural gas pipe line across land owned and held by Rogers South in Nueces County.

The trial was to a jury and resulted in plaintiff's recovering the right-of-way and easement upon the payment of damages to defendant in the sum of $3,224.97. Judgment was entered less than five days before the expiration of the term, and, therefore, under the provisions of Rule 329–a, Texas Rules of Civil Procedure, Rogers South has prosecuted this appeal without filing a motion for new trial.

■ Appellant first contends that the court erred in not giving the definition of "Market Value" requested by him, in its

charge to the jury. That definition reads as follows:

"You are instructed that by the term 'market value' as used in this charge, is meant: the price which property would bring when it is offered for sale by one who desires to sell but is not obligated to sell, and is bought by one who desires to buy but is under no necessity of buying it, taking into consideration all of the uses to which it is reasonably adaptable and for which it either is or in all reasonable probability will become available within the reasonable future."

The charge given by the court reads as follows:

"By the term 'market value' as used herein is meant the price the property will bring when it is offered for sale by one who desires to sell but is not obligated to sell and is bought by one who desires to buy, but is under no necessity of buying."

The definition given by the trial court is in effect the one approved by the Supreme Court in State v. Carpenter, 126 Tex. 604, 89 S.W.2d 194, and 979, and was properly given here. It is true that in City of Austin v. Cannizzo, 153 Tex. 324, 267 S.W.2d 808, the Supreme Court, speaking through Associate Justice Calvert, held that a definition of "Market Value" similar to that requested by appellant was properly given in that case, due to the peculiar facts existing there, but such facts do not exist in this case, however, the Court did not go so far as to say that the definition approved in the Carpenter case would have been reversible error in the Cannizzo case. The trial court did not err in refusing to give the definition of "Market Value" requested by appellant, in its charge to the jury.

■ Appellant next contends that the trial court erred in refusing to give his specially requested Instructions Nos. 1 and 2, reading as follows:

"You are instructed that as to those pipe line easements which are shown by the evidence in this case to have been given upon the Rogers South land, which did not provide for a definite location and description to such easement, the owner of the land has the right to locate such easement, provided he exercises such right in a reasonable manner, having due regard to the rights and interest of the owner of such easement."

"You are instructed that with reference to those pipe line easements shown by the evidence in this case to have been given upon the Rogers South lands which do not provide in the easement granted for the plan of construction and materials to be used in the installation of the pipe line, that the owner of the easement may be required to change the line as originally constructed to enable the full enjoyment of the property rights of both himself and the owner of the land."

The evidence shows that there were in existence some six or eight other pipe line easements across the tract of land owned by Rogers South and here involved. Some of these easements were what are sometimes called "wide open" easements, by which is meant unrestricted easements without definite terms. If the trial court had given these requested instructions, the jury would have been led to believe that where easements are "wide open" the owner of the land can order the easement owner to change the location of such easements to suit the landowner's convenience, even though the pipe lines have already been built and fully installed. There was no evidence here that there was any probability that any attempt would be made to change the location of the existing pipe lines.

In Cozby v. Armstrong, Tex.Civ.App., 205 S.W.2d 403, 406, we find the following:

"Most of the text books are in harmony with the general rule that the location of an easement may not be changed by the easement owner or the servient tenement without the consent of both parties, even though the way so located becomes detrimental to the use and convenience of the servient estate. 28 C.J.S. Easements § 84. * * *

"And in 9 R.C.L. § 49, of the same text, we find the following language: 'When an easement granted in indefinite terms has been once selected and located, its location cannot be changed by either the owner of the land or the owner of the easement without the consent of the other party, for it would be an incitement to litigation to treat such an easement as a shifting one, and would greatly depreciate the land on which it is charged and discourage its improvement.' "

Appellant's Instructions Nos. 1 and 2 were properly refused.

Appellant next complains of the court's refusal to give his requested Instruction No. 3, and overruling his objections Nos. II, III, IV, X and XIV to the court's charge. His requested Instruction No. 3 reads as follows:

"You are instructed that it would be an interference with the use of the property for the specified purpose for which the easement is acquired, for the defendant in this case to place any improvements along and over the pipe line of plaintiff laid under such easement."

The trial court, in its charge, gave the following instruction:

"You are instructed that Texas Eastern Transmission Corporation, on December 18, 1956, acquired by condemnation proceedings an easement covering 2.3 acres for the purpose of laying, constructing, maintaining, operating, altering, replacing, and removing a pipeline, with necessary fittings, tie-overs, and appliances and other appurtenances, incidental to and for use in connection therewith, for the transmission of natural gas.

"By the term 'easement' is meant the right to use the land for some specific purpose or purposes, and *non* other, so that the title to the property covered by the easement as well as the right to use, occupy, and enjoy the property remains in the original landowner; provided, however, such use, occupancy, and enjoyment of the property by said original owner does not interfere with the use of the property for the specified purpose, or purposes, for which the easement is acquired."

Appellant objected to the second paragraph above set out because it did not inform the jury of the specific purpose, or purposes, for which such land in such easement might be used by appellee; because it failed to apprise the jury what act, or acts, by appellant are permitted, and what act, or acts, by appellant would be an interference with the use of the property for the specified purpose for which the right-of-way was acquired; because the charge amounts to a general charge and is prejudicial to appellant, and when taken with the other portions of the charge the instruction wholly fails to apprise the jury of the burden placed on the owner of the subservient estate by the dominant estate, thus depriving appellant of substantial rights, since the jury had no instruction to guide them in considering the weight of the testimony as to the effect of said easement on appellant's property; because such charge is irrelevant, immaterial and prejudicial, since there is no testimony or issue which supports such instruction, and its submission to the jury will tend to create in the mind of the jury that value means estate, or fee simple estate, when such issue is not before the jury.

Appellant objected to Special Issue No. 2 of the court's charge, because such issue requires the jury to take into consideration the uses, if any, appellant may make of the land which are not inconsistent with the uses for which appellee condemned the same, but fails to apprise the jury of what

uses are permitted and what uses are inconsistent, and leaves the jury to speculate on a question of law as to the effect such easement will have upon the subject land. Appellant also objected to the failure of the court to give his requested Instruction No. 3, above set out.

The trial court properly refused to give the requested instruction and properly overruled the objections. When the pleadings and the evidence are considered the charge given by the court was sufficient and was not subject to the objections. Aycock v. Houston Lighting & Power Co., Tex.Civ.App., 175 S.W.2d 710; Texas Public Utilities Co. v. Bass, Tex.Civ.App., 297 S.W. 301.

The trial court did not err in overruling appellant's objections Nos. VI, VII, VIII and IX, to the court's charge. These objections present the contention that the trial court erred in submitting Special Issues Nos. 1 and 2, reading as follows:

"From a preponderance of the evidence, what do you find was the market value of the average acre of the strip of land condemned by the Texas Eastern Transmission Corporation as a right-of-way and easement for the purpose of constructing, operating, maintaining and removing of a 30-inch high pressure gas pipe line, immediately prior to December 18, 1956?"

"From a preponderance of the evidence, what do you find was the market value of the average acre of the strip of land condemned by the Texas Eastern Transmission Corporation as a right-of-way and easement for the purpose of constructing, operating, maintaining and removing of a 30-inch high pressure pipeline immediately after December 18, 1956, taking into consideration the uses, if any, which Rogers South may make of the land not inconsistent with the uses of said land for the purposes for which Texas Eastern Transmission Corporation condemned said land?"

The effect of the two issues was to inquire of the jury as to the before and after market value of the land within the easement. This was the proper way to submit the case to the jury as to the land within the right-of-way. State v. Carpenter, supra; Aycock v. Houston Lighting & Power Co., supra; Central Power & Light Co. v. Graddy, Tex.Civ.App., 318 S.W.2d 943; Tennessee Gas Transmission Co. v. Dishman, Tex.Civ.App., 303 S.W.2d 471.

The trial court properly gave the instruction "that the land condemned * * * is for an easement and right-of-way only," and does not comprehend the taking of the mineral estate or of the fee simple title to such property, and it was not subject to the exception taken by appellant.

Appellee sought to condemn as a temporary easement, a strip across appellant's land twenty-five feet in width, the same being twelve and one-half feet on either side of its fifty-foot permanent easement. The jury answered "None" to Special Issue No. 5, asking what, if any, damage appellant suffered by reason of the condemnation by appellee of a temporary right-of-way of twenty-five feet in width. The only evidence on this point was that of appellant's witness Paul Poepke, who testified that the rent on this strip would be $11.25. Appellant would be entitled to the sum of $11.25, under the undisputed evidence. Central Power & Light Co. v. Graddy, supra.

Appellant next contends that he should have been allowed interest on the sum of $2,625, from December 18, 1956, the date it was awarded to him by the commissioners, to March 27, 1957, the date appellee deposited it with the County Clerk of Nueces County, amounting to the sum of $37.59. We agree with this contention, and likewise appellant was entitled to interest upon $599.97, the amount the jury increased his award above that given by the commissioners, at the rate of 6% per annum amounting to $15.62. Appellant was also entitled to recover the sum of $11.25 as rent for the twenty-five foot temporary easement.

Appellant next contends that due to the fact that the judgment was not prepared and entered until July 24, 1959, only three days before the expiration of the term, he was prevented from filing a motion for new trial and from presenting the matter of jury misconduct. The verdict was returned on July 16, 1959, and appellant's attorney learned of probable jury misconduct on July 17, the next day. He did not file in the trial court, nor in this Court, any affidavits showing jury misconduct. Appellant does not show that he, in any way, undertook to have the judgment sooner prepared and entered. Under all the circumstances, we cannot reverse the judgment on the probability that there might have been jury misconduct involved.

The judgment will be amended by increasing the amount thereof by the sum of $64.46, making a total judgment in the sum of $3,289.43, and as thus amended the judgment is affirmed.

The cost of this appeal will be adjudged equally between appellant and appellee.