COASTAL INDUSTRIAL WATER
AUTHORITY, Petitioner,

v.

CELANESE CORPORATION OF
AMERICA, Respondent.

No. B–8437.

Supreme Court of Texas.

Nov. 28, 1979.

598

Fred Spence, Houston, for petitioner.

Winters, Deaton, Briggs & Britton, Alfred L. Deaton, III, Houston, for respondent.

McGEE, Justice.

This is a condemnation proceeding brought by the Coastal Industrial Water Authority[1] to condemn a water line ease-

---

1. The Authority is a water supply and control district created pursuant to Article 16, Section 59 of the Texas Constitution and has the power of eminent domain. *See* Tex.Laws 1967, ch.

ment on land owned by the Celanese Corporation. The trial court sustained Celanese's special exceptions to the Authority's petition and dismissed the suit. The court of civil appeals affirmed the order of dismissal. 578 S.W.2d 544. We hold that the trial court erred in sustaining the special exceptions; therefore, we reverse the judgment of the court of civil appeals and remand the cause for trial.

■ In condemnation proceedings the property owner is given a single opportunity to recover damages for the taking of his property for public use. The procedure is governed by statute and the statutory requirements are to be strictly followed.[2] *City of Bryan v. Moehlman*, 155 Tex. 45, 282 S.W.2d 687, 690 (1955).

Under the general eminent domain statutes formal proceedings begin when the condemnor files a statement with the county judge. The contents of the statement are set out in article 3264:

> "It shall describe the land sought to be condemned, state the purpose for which it is intended to be used, the name of the owner, if known, and that the plaintiff and the owner have been unable to agree upon the value of the land or the damages."

Tex.Rev.Civ.Stat.Ann. art. 3264 (Vernon 1968). In 1973 the Authority filed a "Plaintiff's Statement" with the county court. The statement sought to condemn a "permanent water line easement in, on, upon, along, under, over and across the following described tract or parcel of land . . . ." The easement was located and described by metes and bounds. It was approximately 2900 feet long and 115 feet wide.

Special commissioners appointed to assess damages entered an award of $29,000.

Pursuant to article 3268, the Authority deposited the award with the registry of the court, took possession of the property, and constructed its underground water pipeline. *See* Tex.Rev.Civ.Stat.Ann. art. 3268 (Vernon 1968 & Supp.1979).

■ Celanese timely filed objections to the award, requesting that the cause be tried in the county court. Later Celanese withdrew the award from the registry, and although it was thereby prevented from litigating the Authority's right to take the property, it could continue to litigate the issue of compensation. *See State v. Jackson*, 388 S.W.2d 924, 925–26 (Tex.1965). Subject to the requirements of article 3264, the Authority's "Plaintiff's Statement" was comparable to an original petition; Celanese was entitled to challenge its sufficiency with special exceptions. *See Curfman v. State*, 240 S.W.2d 482, 485 (Tex.Civ.App.— Dallas 1951, writ ref'd n. r. e.).

Celanese's first two special exceptions complained that the statement failed to allege:

> "No. 1: The specific rights of use of said easement taken by Plaintiff;
>
> "No. 2: The specific rights of use of said easement remaining to Defendant; . . . ."

The remaining exceptions complained of the lack of allegations regarding specific rights and uses of the easement: Celanese's right of crossing the easement by road, Celanese's rights of crossing the easement by pipeline, limitations on ingress and egress along the easement, Celanese's right to fence the property, the Authority's responsibility for grass and drainage, ownership of the fee title of the subject property, the parties' rights to construct improvements on the

---

601, at 1381–82, *as amended by* Tex.Laws 1969, ch. 767, at 2277–81.

2. The statute creating the Coastal Industrial Water Authority provides that it has the authority granted in the statutes pertaining to water control . and improvement districts. These included articles 7880–125 and 7880–126, governing eminent domain proceedings, which were the predecessors of sections 51.231 to 51.279 of the current Water Code. Section

51.233 provides that the condemnor may elect to proceed under the provisions of the Water Code or under the general eminent domain statutes. *See* Tex.Water Code Ann. arts. 51.-231–279 (Vernon 1972). The Authority alleged in its statement that the proceedings were to be brought under the eminent domain statutes. *See* Tex.Rev.Civ.Stat.Ann. arts. 3264–3271 (Vernon 1968).

easement, and the Authority's liability for possible damage to improvements placed on the easement by Celanese.

■ These special exceptions were sustained by the trial court. The Authority refused to amend its statement and the trial court ordered the suit dismissed. The initial question presented on appeal was whether the trial court erred in sustaining the special exceptions. We agree with the opinion of the court of civil appeals that there was no necessity that Celanese's specific rights and uses be set out in the petition. We disagree, however, with the opinion of the court of civil appeals insofar as it held that the first exception was correctly sustained.

The Authority contends that its petition complied with the allegations required by article 3264, including the purpose for the condemnation and a description of the property to be condemned. It argues that an unlimited easement for the purpose of a water line was clearly made the subject of the proceeding and the easement was accurately described and located by metes and bounds. We agree with this contention.

■ The Authority's statement alleged that it wished to acquire the water line easement "for the transportation of water and other facilities and uses incidental thereto or in connection therewith for Trinity Water Conveyance System." We find this to be an adequate statement of the purpose for which the easement was desired. Further allegations regarding the purpose of the condemnation or the necessity of the taking were unnecessary. In the absence of allegations that the condemnor acted arbitrarily or unjustly, the legislature's declaration that a specific exercise of eminent domain is for public use is conclusive, and the condemnation proceedings are limited to a determination of the amount to be paid to acquire that use. When the right to condemn is not limited to cases of necessity, the question of necessity is not a matter to be pleaded and proved. *See Housing Authority v. Higginbotham*, 135 Tex. 158, 143 S.W.2d 79, 88–89 (1940); *Joyce v. Texas Power & Light Co.*, 298 S.W. 627, 629 (Tex.

Civ.App.—El Paso 1927, no writ). Celanese does not contend that the condemnation was not for a public use or was not necessary. Moreover, by withdrawing the funds from the registry Celanese narrowed the proceedings to a determination of the amount of compensation.

The petition in a condemnation proceeding has several functions that require an accurate description of the property to be condemned: "Unless the land is adequately identified, the owner cannot know what portion of his property is required, nor the commissioners what damages to assess, nor can the court by its decree effectively pass title." *State v. Nelson*, 160 Tex. 515, 334 S.W.2d 788, 790 (1960). The petition's description of the property is the basis for the decree. The adequacy of the petition's description is tested by the standards used for adequacy of description in a deed. "[T]he certainty required in the description of the land in a condemnation proceeding 'is of the same nature as that required in conveyances of land, so that a surveyor could go upon the land and mark out the land designated.'" *Wooten v. State*, 142 Tex. 238, 177 S.W.2d 56, 57 (1944); *see Miers v. Housing Authority*, 153 Tex. 236, 266 S.W.2d 842, 844 (1954).

In *Parker v. Ft. Worth & D. C. Ry. Co.*, 84 Tex. 333, 19 S.W. 518 (1892), the landowner challenged the adequacy of the description of a railroad right of way obtained by condemnation. The description in the petition was found to be inadequate because although it identified a certain tract, it alleged only that a line had been located on the tract: "The petition alleged that a line had been located, but referred to no object and gave no description whereby that line might be ascertained . . . ." *Id.* at 520. In contrast to the petition in *Parker v. Ft. Worth & D. C. Ry. Co.*, a petition to condemn an unlimited easement sufficiently describes the easement when the tract from which the easement is to be taken is described and the easement is specifically located upon it. The petition quoted in *Compton v. Texas Southeastern Gas Co.*, 315 S.W.2d 345 (Tex.Civ.App.—Hous-

ton 1958, writ ref'd n. r. e.), contains a description of a pipeline easement "as it lies upon the ground." *Id.* at 346–47, 349. Other condemnation cases have found metes and bounds descriptions of easements similar to the physical description in this case to be adequate. *See, e. g., Browne v. Jefferson County*, 507 S.W.2d 293 (Tex.Civ.App.—Beaumont 1974, writ ref'd n. r. e.); *Southwestern Bell Telephone Co. v. Brassell*, 427 S.W.2d 709 (Tex.Civ.App.—Tyler 1968, writ ref'd n. r. e.); *Sinclair Pipe Line Co. v. Peters*, 323 S.W.2d 651 (Tex.Civ.App.—Beaumont 1959, no writ).

■ The petition in a condemnation proceeding also serves as notice to the landowner of the damages to which he may be entitled, and as the basis for evidence and issues on the question of damages. "[T]he petition should so describe the land to be taken that . . . the interested parties may come prepared with evidence to show what will be just compensation for the land to be condemned." *Parker v. Ft. Worth & D. C. Ry. Co., supra* at 519. Celanese contends that the petition failed to give reasonable notice of the damages attributable to the taking. It argues that the ability of the trial court to properly admit or refuse evidence and to charge the jury on the amount of compensation was impaired by the failure to describe the rights and uses of the parties. We disagree with this contention.

■ When a permanent, unlimited easement is sought the landowner is entitled to the difference in market value of the easement strip and the remainder at the time of the taking. In making this determination it must be considered that an unlimited easement carries with it all rights as are reasonably necessary for enjoyment consistent with its intended use. A pipeline easement allows the condemnor, in the maintenance and construction of its pipeline, to do what is reasonably necessary to accomplish the intended purposes for which the condemnation is sought. *Myers v. Texas Eastern Transmission Co.*, 306 S.W.2d 751, 753 (Tex.Civ.App.—Waco 1957, writ ref'd n. r. e.). The language used to describe the easement, the situation of the parties, and the purposes of the condemnation may all be considered in determining the scope of an easement. *Baer v. Dallas Theater Center*, 330 S.W.2d 214 (Tex.Civ. App.—Waco 1959, writ ref'd n. r. e.).

■ The pleading and proof should be directed toward aiding the court in assessing damages consistent with principles governing the legal effect of the particular easement. As to the court's charge, it is the duty of the court to explain the rights of the parties under the particular easement sought. *Texas Power & Light Co. v. Cole*, 158 Tex. 495, 313 S.W.2d 524, 529 (1958). When an unlimited easement is sought, this may be done by explaining the legal rights of the parties in language consistent with principles governing common law and statutory rights connected with the easement. *See South v. Texas Eastern Transmission Corp.*, 332 S.W.2d 442, 444–45 (Tex.Civ.App.—San Antonio 1960, no writ).

■ In view of these established guidelines for the conduct of condemnation proceedings, we find that the Authority's petition was sufficient to condemn an unlimited water line easement. It constituted an adequate basis for writing a decree declaring the property rights of the parties and for admitting evidence and charging the jury on damages.

■ We recognize that in some situations a condemnor may not desire to use an easement to its full legal extent. The condemnor may intend to limit its rights from those to which he is entitled under common law and statutory rules, or to create specific proprietory rights in the landowner. Under these circumstances the condemnor will be seeking only a limited easement. In other situations the parties may vary their common law rights and duties by agreement or agree that certain rights or duties should be clearly set out in the decree. In these situations the petition should include allegations to that effect. Consistent with the pleadings, the charge may apprise the jury of any limitations on the easement and damages may be commensurately reduced.

In *Texas Power & Light Co. v. Cole,* *supra,* this court held that the jury was properly instructed that the easement acquired was subordinate to the landowner's right to enter the property to remove sand and gravel. The condemnor had filed a supplemental petition expressly reserving those proprietary rights in the landowner. These same rights were fixed by the court decree. *Id.* at 529.

In *Texas Power & Light v. Lovinggood,* 389 S.W.2d 712 (Tex.Civ.App.—Dallas 1965, writ ref'd n. r. e.), the parties desired to ensure that the land upon which an easement was to be condemned would remain available for residential subdivision. The petition set out particular rights and duties of the parties in view of future residential use. The court held that a requested instruction apprising the jury of these limitations should have been given. *Id.* at 716.

Caution must be exercised by the condemnor in writing its petition to avoid the type of allegations prohibited in *White v. Natural Gas Pipeline Co.,* 444 S.W.2d 298 (Tex.1969). In *White* this court determined whether certain allegations in a condemnation petition were valid limitations on the pipeline easement sought to be condemned, or merely promissory statements and expressions of the condemnor's future intentions. Certain allegations were found to be merely promissory and thus could properly be stricken. The court reasoned that such allegations served only to detrimentally affect the landowner's right to recover all damages in a single proceeding. Having no effect as limitations on the easement, these allegations stood as unaccepted promises, revocable at the will of the condemnor. A promise to pay for future crop damage, for example, constituted a mere offer by the condemnor not accepted by the landowner. The condemnor's liability for crop damage was outside the scope of duties connected with the easement. Damage to crops is considered in assessing compensation only insofar as the market value of the land at the time of the taking is affected. *Id.* at 301.

In *Coastal Industrial Water Authority v. Reynolds,* 503 S.W.2d 593 (Tex.Civ.App.—Houston [1st Dist.] 1973, writ ref'd n. r. e.), the condemnor's petition sought a strip of land for use as a canal and promised to maintain and construct a bridge but did not describe it. The court held that the proper way to reduce the desired taking and create a proprietary right in the landowner was by way of an amendment to the petition setting out in detail the plans and specifications of the bridge. *Id.* at 604.

The distinction between promissory statements prohibited by *White v. Natural Gas Pipeline Co.,* and statements creating property rights was discussed in *State v. Frost,* 456 S.W.2d 245 (Tex.Civ.App.—Houston [14th Dist.] 1970, writ ref'd n. r. e.). The petition in *Frost* sought to condemn the fee title to land for use as a highway interchange. It contained an allegation that "the right of ingress and egress to or from the remaining property of defendants abutting on said highway has not and is not to be denied . . . ." The court held that the pleadings were not merely promissory. The right of the landowner to access was a right not taken unless the petition called for its taking. A general allegation pertaining to ingress and egress did not add to or diminish the rights of the parties under established rules for determining the extent of proprietary interest taken. *Id.* at 254–55.

We hold that the special exceptions to the Authority's petition were incorrectly sustained. The absence of allegations that merely restated the permissible legal effect of the unlimited water line easement described in the petition did not cause it to be inadequate. Moreover, because an unlimited water line easement was sought, allegations to the effect that the authority's rights would be reduced or Celanese's rights enlarged would be inconsistent and possibly improper under the holding of *White v. Natural Gas Pipeline Co.* If the Authority had desired only a limited water line easement, allegations to that effect could have been included in its statements. Furthermore, if during the course of the condemnation proceedings the parties agree to limit

or clarify the legal extent of the easement, the statement is amendable to embody such negotiations. Through discovery the landowner may learn of the condemnor's intentions for future use of the water line easement. In a case such as this, where the water pipeline has already been put into use, the landowner will already be aware of the existing use of the condemned property and the effect of this use on its own particular needs. Attention will thus be directed toward specific situations calling for negotiation and express delineation of the parties' rights and duties.

The judgments of the court of civil appeals and the trial court are reversed and the cause is remanded for trial to determine the amount of compensation to which Celanese is entitled.