**CITY OF DALLAS, Appellant/Cross–Appellee**

v.

**PACIFICO PARTNERS, LTD., Appellee/Cross–Appellant.**

**No. 05–06–01191–CV.**

Court of Appeals of Texas, Dallas.

July 23, 2009.

Kenneth R. Bennett, Office of City Atty., Barbara E. Rosenberg, City of Dallas Attorney's Office, Dallas, TX, for Appellant.

Clinton Schumacher, Locke Liddell & Sapp LLP, Dallas, TX, for Appellee.

Before Justices MORRIS, BRIDGES, and O'NEILL.

## OPINION

Opinion by Justice BRIDGES.

The City of Dallas (City) sought to condemn a pedestrian easement on part of a tract of land owned by Pacifico Partners, Ltd. (Pacifico). Pacifico counterclaimed for its attorneys' fees and expenses under Texas Property Code section 21.019(b). The trial judge rendered judgment condemning the easement and granted Pacifico's counterclaim. Both parties appeal. Pacifico challenges the legal and factual sufficiency of the evidence to support the trial judge's findings and conclusions. The City appeals the award of attorneys' fees and expenses. We sustain the City's issues and overrule Pacifico's. We affirm the judgment of condemnation but reverse the award of fees and costs.

### BACKGROUND

On April 24, 2004, the Dallas City Council passed Resolution 04–1247 (Resolution)

determining that "public necessity" required the City to acquire a pedestrian easement across the side of a valet parking lot owned by Pacifico on Commerce Street in downtown Dallas. The easement would consist of 1150 of the 15,000 square feet of Pacifico's lot. Concrete paving, a wrought iron fence, a parking kiosk, and an awning were on the portion of the lot proposed for the easement. The Resolution did not mention these fixtures. Further, the Resolution did not specify any air or subsurface rights. Pacifico contends the City acted beyond the scope of the Resolution by condemning air rights, subsurface rights, and fixtures. Pacifico also contends the City's written offer to acquire the easement (Offer) for the amount of $27,600 did not include an amount for fixtures and air and subsurface rights as required.

The Offer and the Resolution were based upon an appraisal by Julius Blatt. While Blatt's original appraisal did not separately value Pacifico's fixtures or improvements, two later appraisals did include a $36,750 valuation for fixtures or improvements to be taken, in addition to a $29,000 base value without fixtures, for a total of $65,750. All three appraisals stated only surface rights would be taken, with Pacifico to retain air and subsurface rights.

When Pacifico did not accept the Offer, the City filed its condemnation statement. Special commissioners appointed pursuant to the property code awarded Pacifico $65,750 at an administrative hearing. Pacifico filed objections to the award in the trial court, and the City filed an application for writ of possession. The parties submitted a statement of stipulated facts to the trial judge, and the trial judge also heard evidence presented by both parties. The trial judge determined the City had the right to take the easement, and a jury determined the value of the easement was $123,000. The trial judge found Pacifico was entitled to $47,629 for fees and expenses, plus pre-and post-judgment interest. The trial judge entered judgment and filed findings of fact and conclusions of law.

## STANDARD OF REVIEW

The trial judge made eighteen numbered findings of fact. A party appealing a judgment in a nonjury trial "must complain of specific findings and conclusions of the trial court, because a general complaint against the trial court's judgment does not present a justiciable question." *IKB Indus. (Nigeria) Ltd. v. Pro–Line Corp.*, 938 S.W.2d 440, 445 (Tex.1997). It is thus incumbent on the appellant to attack the findings under appropriate legal and factual sufficiency issues. *Id.* If the trial court finds facts and a party does not challenge them, "these facts are binding upon both the party and the appellate court." *Id.*

We review the trial court's findings under the same legal and factual sufficiency standards applied in reviewing evidence supporting a jury verdict. *Long v. Long*, 196 S.W.3d 460, 464 (Tex.App.-Dallas 2006, no pet.). We sustain a legal sufficiency challenge where (1) there is a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a scintilla, or (4) the evidence conclusively establishes the opposite of a vital fact. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex.2003). Evidence that is more than a scintilla is sufficient to enable reasonable and fair-minded people to differ in their conclusions and evidence that is less than a scintilla is evidence so weak it does no more than create a surmise or suspicion of a fact. *Id.* In a legal

sufficiency review, we view the evidence in a light most favorable to a finding and indulge every reasonable inference to support it, crediting favorable evidence if a reasonable factfinder could, and disregarding contrary evidence unless a reasonable factfinder could not. *Thomas v. Martinez,* 217 S.W.3d 680, 683 (Tex.App.-Dallas 2007, pet. struck); *see City of Keller v. Wilson,* 168 S.W.3d 802, 807, 822 (Tex.2005).

In a factual sufficiency review, we consider and weigh all the evidence and set aside a finding only if the evidence supporting it is so weak it is clearly wrong and manifestly unjust. *Long,* 196 S.W.3d at 464. The trial court is the fact-finder, weighs the evidence, and resolves conflicts in it. *Young v. Young,* 168 S.W.3d 276, 281 (Tex.App.-Dallas 2005, no pet.). We do not pass on witness credibility or substitute our judgment for the trier of fact to reach a different conclusion. *Long,* 196 S.W.3d at 464. The amount of evidence necessary to affirm a judgment is far less than that necessary to reverse. *Id.*

However, we are not bound by the trial court's legal conclusions, *FDIC v. F & A Equipment Leasing,* 854 S.W.2d 681, 685 (Tex.App.-Dallas 1993, no writ), which we review de novo with no deference. *Quick v. City of Austin,* 7 S.W.3d 109, 116 (Tex. 1998); *Nicol v. Gonzales,* 127 S.W.3d 390, 394 (Tex.App.-Dallas 2004, no pet.). Incorrect legal conclusions do not require reversal if controlling fact-findings will support a legal theory that is correct. *Arcadia Fin., Ltd. v. Sw.-Tex. Leasing Co.,* 78 S.W.3d 619, 623 (Tex.App.-Austin 2002, pet. denied).

## DISCUSSION

### Pacifico's Appeal

█ We first address the merits of Pacifico's claims concerning the City's condemnation. A city's exercise of the power of eminent domain through the process of condemnation is governed by constitution and statute.[1] As relevant here, this process includes a determination by the municipality's governing body that it is necessary to acquire property for a public purpose. *See* TEX. LOCAL GOV'T CODE ANN. § 251.001 (when governing body of municipality considers it necessary, municipality may exercise right of eminent domain for a public purpose); *Whittington v. City of Austin,* 174 S.W.3d 889, 896–98 (Tex.App.-Austin 2005, pet. denied) (city must prove necessity of taking to advance public purpose). Then, if the city and a property owner are unable to agree on an amount of damages, the city may file a condemnation petition, proceed to a hearing before special commissioners appointed by the trial judge, and then to trial de novo before the trial court upon filing by either party of objections to the special commissioners' findings. *See generally* TEX. PROP. CODE ANN. §§ 21.012–21.018; *PR Investments & Specialty Retailers, Inc. v. State,* 251 S.W.3d 472, 476 (Tex.2008) (on appeal from special commissioners' proceeding, case tried to court de novo). Pacifico contends the trial court's judgment is void for lack of jurisdiction because the City failed to show strict compliance with these statutory procedures. *See State v. Bristol Ho-*

---

1. *See, e.g.,* TEX. CONST art. I, § 17 (no person's property shall be taken for public use without adequate compensation being made); TEX. LOCAL GOV'T CODE ANN. §§ 251.001–251.002 (Vernon 2005) (municipality may exercise right of eminent domain to acquire property for public purpose in accordance with Chapter 21 of the Texas Property Code);

TEX. PROP CODE ANN. §§ 21.012–21.024 (Vernon 2004 and Supp.2008) (procedure for exercise of eminent domain authority); *see generally Hubenak v. San Jacinto Gas Transmission Co.,* 141 S.W.3d 172, 179 (Tex.2004) (outlining procedural steps in condemnation proceeding).

*tel Asset Co.,* 65 S.W.3d 638, 640 (Tex. 2002) (party attempting to establish its right to condemn must show strict compliance with law authorizing private property to be taken for public use).

■ Specifically, Pacifico contends that, because the Resolution and Offer do not mention taking existing fixtures or the air and subsurface rights needed to add improvements in the easement space, the City was barred from including those rights in its condemnation statement and its authorized taking was limited to a simple ingress/egress right to walk across the surface area. Under its two specific issues Pacifico argues there is legally and factually insufficient evidence to support the trial court's findings and conclusions that (i) the Dallas City Council authorized, and found there was necessity for, condemnation of property interests that included fixtures and air and subsurface rights and (ii) the City made an express pre-suit offer to purchase those rights and fixtures.

We conclude there was legally and factually sufficient evidence to support the trial judge's findings of fact and conclusions of law regarding the air and subsurface rights and fixtures. Finding of Fact 14 provided that the Resolution authorized the acquisition of a "pedestrian easement," and further provided, "The easement was to be improved as reflected by the architect or designer drawing admitted into evidence during the course of the trial." Finding of Fact 15 provided, "Implicit in the authorization to acquire the easement was the acquisition of sufficient rights to construct and maintain the improvements needed for the pedestrian way." Findings of Fact 16 and 17 provided the subsurface and air rights "necessary for the easement" extend to five feet below and thirty-five feet above the surface of the land, "reducible by action of the fee simple owner" to 25 feet in height

and to "no more [subsurface] than necessary to support the walkway." Conclusion of Law 22 provided, "An easement includes the interests necessary for the use contemplated," and thus the City's authorization of the acquisition of an easement "extended to subsurface rights, air rights, and fixtures necessary for the pedestrian easement." Conclusions of Law 29 and 30 provided the declarations of public use and necessity in the Resolution "included all the property sought to be condemned." While Pacifico did not challenge each of these findings and conclusions by number, its argument is that there is factually and legally insufficient evidence to support the trial court's findings and conclusions regarding air and subsurface rights and fixtures.

We first review the evidence presented at trial. The City offered the testimony of Dorcy Clark, an employee of the City of Dallas who worked in the areas of city planning and economic development and had knowledge regarding the planning of the easement. Clark testified the pedestrian easement project at issue was located within a tax increment financing (TIF) district for the city center of Dallas. Two City of Dallas ordinances establishing the TIF district were introduced into evidence during Clark's testimony. The project plan included in the City's records relating to the ordinances explains that "pedestrian linkages" in the TIF district were "a vital element in securing growth and investment within the area," and Clark testified "pedestrian improvements are vital to the TIF district."

Clark testified she also worked on a project for a pedestrian easement at 1608 Main Street to adjoin the pedestrian easement at issue. She identified the City Council resolution addressing the Main Street easement, as well as the "agenda information sheet" provided to the City

Council and attached to the resolution. Clark read from the agenda information sheet that the public infrastructure portion of the project would be "pedestrian access easement and streetscape improvements including paving, street lighting, and pedestrian lighting." Clark testified the agenda information sheet noted that negotiations had begun with the property owner of the "second half of the access-way," which is the easement at issue. Clark further testified the purpose of creating the walkway was "to create more pedestrian activity." The agenda information sheet noted that "[t]he access-way will be designed to provide an environment similar to Stone Street Gardens." Clark testified the Stone Street Gardens walkway included "special paving, lighting, landscaping, awnings that kind of yielded or sheltered from the sun."

Clark identified the agenda information sheet accompanying City Council Resolution 04–1247, at issue here. She noted the agenda information sheet described the Council's previous actions regarding the Main Street portion of the easement. The agenda information sheet, offered into evidence by the City, noted the earlier Main Street resolution "contemplated the pedestrian easement connecting from Main Street to Commerce Street, through two properties," and referenced appropriations from the City Center TIF District. The agenda information sheet also noted, "[i]n the City's retail recruitment efforts, it has been determined that the current distance between cross streets is not conducive to a retail environment. The proposed pedestrian access ... will create a mid-block connection to the Dalpark Garage where the City is leasing spaces for transient public parking."

Clark identified photographs of the property in question, as well as an artist's rendering of the proposed walkway. She testified the rendering showed "surface-enhanced upgraded pavement," landscaping, a "gate or wall" for security, an overhead arch with "glass to protect from the weather," and lighting. She testified "some sort of supports in the ground" would be necessary to support the structures proposed for the walkway, so the easement extended five feet below the surface of the ground, but would be reduced to only the amount necessary to support the walkway once the adjoining property was developed. Similarly, while the height of the easement initially extended to 35 feet above the surface, once the improvements were completed and the adjoining property was developed, the height of the easement would be reduced to 25 feet.

On cross-examination, Clark conceded the artist's rendering was not the final construction plan, and she did not know whether certain fixtures on Pacifico's property would need to be taken for the walkway or not. She also admitted the City Council resolution regarding the Main Street half of the walkway did not include any finding of necessity regarding the other half of the walkway proposed for Pacifico's property. In addition, she testified the Main Street half of the walkway would be only eight feet in height because it runs through a building and would be restricted by the distance from floor to ceiling in that building.

Pacifico's sufficiency challenge to the trial judge's findings and conclusions is premised upon its contention that the Resolution did not authorize and find necessity for the City's condemnation of air and subsurface rights and fixtures. Pacifico argues the City condemned property rights the Resolution neither authorized nor found necessary to condemn.

Regarding fixtures, Pacifico contends it retained title to permanent improvements on the land, constituting a property right

that the Resolution did not expressly condemn, relying on *Brunson v. State,* 418 S.W.2d 504, 506 (Tex.1967). As here, the property in *Brunson* included permanent improvements, "a trailer house, cabana, and other related items." *Id.* at 505. The court cited the rule that "[w]here only an easement is acquired the owner retains title to the land and all that is ordinarily considered part of the land." *Id.* at 506. The *Brunson* court's holding, however, addressed the specificity of the final judgment in the condemnation case, not the specificity of the resolution authorizing the condemnation. *See id.* at 507 ("But it should be the burden of the condemning authority to have its *judgment* speak expressly of special arrangements in the easement taking; otherwise, the ownership of the landowner in improvements which are a part of the realty, and his right to remove them, will be enforced." (emphasis added)). Where the judgment did "no more than award the State the easement which it sought for right-of-way purposes," *id.* at 507, it did not include title to the permanent improvements. In contrast, the judgment here specifically addresses the improvements and the City's rights regarding them. As noted in *Brunson,* "the easement thus acquired carried with it the right of the State to remove any improvements on the land that would interfere with the full and beneficial use of the easement rights but did not take away the subsisting ownership of the landowner in the improvements and his right to remove them," *id.* at 506, and the judgment here stated as much. The trial court's judgment is consistent with *Brunson,* and the court in *Brunson* did not address the issue presented here, the scope of a governing body's initial resolution.

Regarding air and subsurface rights, Pacifico contends public "necessity" was limited to the rights that would allow a pedestrian to walk from one end of the property to the other. Pacifico relies on *Coleman v. Forister,* 514 S.W.2d 899, 903 (Tex.1974), and *Dail v. Couch,* 99 S.W.3d 390, 391 (Tex.App.-Corpus Christi 2003, no pet.), for the proposition that "[a] grant of an easement in general terms implies a grant of a use such as is reasonably necessary and convenient and as little burdensome as possible to the servient owner." *Coleman* and *Dail,* however, involved the interpretation of easements contained in a deed, *Coleman,* 514 S.W.2d at 901, and a subdivision restrictive covenant, *Dail,* 99 S.W.3d at 391. No condemnation proceeding was at issue and the courts did not address the scope of a resolution made by a governmental entity to acquire property for public use.

Pacifico cites *Whittington* for the proposition that the City must prove its governing body "expressly" found the property rights were necessary for a public use and "expressly" authorized condemnation of the property sought. In *Whittington,* the court determined the City failed to meet its summary judgment burden to conclusively establish it condemned the landowners' property for a public use, and to establish affirmative acts manifesting that it made a necessity determination regarding the condemnation. 174 S.W.3d at 900–01, 901–06. The City contended its proposed public use for the Whittingtons' property was a parking garage and a chilling plant near the Austin Convention Center. *Id.* at 894. The court noted that the question of whether the condemnor's intended use of the property constitutes a "public use" is one of law, and a "mere declaration" by a legislative body cannot convert a private use into a public one. *Id.* at 897. The court also noted a presumption arises from a determination by the condemnor of the necessity for acquiring certain property. *Id.* at 898. To gain this presumption of necessity, however, "the condemnor must

first establish that its governing board actually made a determination that the particular taking was necessary to advance the ostensible public use." *Id.; see also id.* at 902 ("Proof that a condemnor's governing body made a necessity determination is what gives rise to the presumption that the taking was, in fact, necessary."). The resolution approved by the Austin City Council did not meet this requirement, because it "stated only that the City was taking the Whittington's property for a 'public use,' but did not specify what its intended public use was." *Id.* at 900 (emphasis original). The court pointed to the City's failure to "offer any other evidence, such as minutes of council meetings, to establish this critical fact." *Id.*

In contrast to the resolution in *Whittington,* Resolution 04–1247 explicitly stated:

> SECTION 1. That the PROJECT [specifically defined as the "Main–Commerce Pedestrian Way"] is a municipal and public purpose and a public use. SECTION 2. That public necessity requires that the CITY acquire the PROPERTY INTEREST [defined as "Pedestrian Easement"] in the PROPERTY [defined by an attached property description of the tract] for the PROJECT.

The City also offered the evidence already described relating to Resolution 04–1247, the intended public use of the property, and the necessity of the condemnation to achieve this public use.

The City cites the supreme court's recent decision in *PR Investments and Specialty Retailers, Inc. v. State,* 251 S.W.3d 472 (Tex.2008), while Pacifico contends the case does not apply. In *PRI,* the court held "a condemning authority's decision to change the traffic-flow design (revising the road's signs and stripes but not its intended use) does not divest the trial court of jurisdiction over the trial de novo." *Id.* at 473. As with *Brunson,* the court in *PRI* addressed a different stage of the condemnation proceedings, after the special commissioners had made their award, but before trial de novo. *See PRI,* 251 S.W.3d at 473. *PRI* is further distinguishable because the property interest in question was neither an easement nor an interest in permanent improvements to the land. *See id.* The court's discussion of the statutory condemnation scheme and the effect of a change in the design plan for the road to be constructed on the condemned property, however, is helpful in considering whether the City was precluded from specifying its plans for the easement space in its condemnation petition (including required air and subsurface space, and the removal of improvements) when the Resolution was silent on those matters.

The supreme court's reasoning in *PRI* included a review of the statutory condemnation scheme and its requirements. *See id.* at 475–79. The court concluded the trial court retained jurisdiction to proceed after the special commissioners' hearing even though the condemning authority's construction plans and design specifics had changed after the hearing, and those changes would affect the value of the property owner's remaining tract. *Id.* at 478–79. The court concluded, "In these circumstances the statutory scheme does not require TxDOT to start over with a new petition, a new hearing before the special commissioners, and payment to Petitioners of all the fees and expenses they incurred in the first administrative proceeding." *Id.* at 479. The commissioners' hearing is an "administrative step" that "affords the parties an opportunity in many instances the present their case in a relatively streamlined fashion and to resolve their differences short of a full-blown court trial, thus sparing the parties and the courts the burdens of a trial." *Id.* at 478. This

statutory purpose could be fulfilled even where "material facts pertaining to damages change" after the hearing. *See id.*

The court also discussed the statutory requirements for the condemnation petition. The court noted, "[a]gain, there is no statutory requirement that TxDOT even mention its plans for the condemned property beyond stating 'the purpose for which the entity intends to use the property.'" *Id.* at 477 (quoting Tex. Prop.Code § 21.012(b)(2)). The court continued, "TxDOT met that requirement when it stated in its petition that its purpose was to acquire the land 'as a part of the State highway system to be constructed, reconstructed, maintained and operated thereon.'" *Id.* The court also noted the petition could be amended because the trial de novo is conducted in the same manner as other civil cases. *Id.* at 476.

Here, the City's intended use of the condemned property to construct a pedestrian walkway was stated in the Resolution and repeated in the City's operative condemnation petition. In the petition, the City stated its intention to place improvements such as paving, landscaping, and street furniture "as will, in its opinion, best serve the public purpose." The City also stated a right to remove improvements which might interfere with the construction, maintenance, or use of its facilities on the easement, and noted limits on the vertical extent of the easement. The purpose of the easement, for a pedestrian walkway, did not change. As in *PRI*, no statutory purpose is thwarted by the City's more specific description of its plans for the easement space in its condemnation petition. *See id.* at 477–78 (change in plans for roadway's signs and striping did not divest trial court of jurisdiction over condemnation proceeding).

In *PRI*, the supreme court cited *Coastal Industrial Water Authority v. Celanese Corporation of America*, 592 S.W.2d 597 (Tex.1979), in which it addressed a similar question. *See PRI*, 251 S.W.3d at 477 n. 25. In *Coastal Industrial Water Authority*, the court considered whether the condemning authority's statement filed with the county court sufficiently described the easement sought on Celanese's land. *See Coastal Indus. Water Auth.*, 592 S.W.2d at 600. The authority's statement "alleged that it wished to acquire the water line easement 'for the transportation of water and other facilities and uses incidental thereto or in connection therewith for Trinity Water Conveyance System.'" *Id.* at 600. The property owner filed special exceptions, contending the authority's statement should have included allegations regarding the specific rights of use of the easement taken and remaining, the owner's right of crossing the easement, limitations on ingress and egress along the easement, the owner's right to fence the property, the authority's responsibility for grass and drainage, ownership of the fee title of the property, the parties' rights to construct improvements on the easement, and the authority's liability for possible damage to the improvements placed on the easement by the owner. *Id.* at 599–600. The trial judge sustained the special exceptions, and the court of appeals affirmed. The supreme court reversed, concluding the property owner's special exceptions to the authority's statement should not have been sustained, because the authority's statement was "an adequate statement of the purpose for which the easement was desired." *Id.* at 602. The court explained:

> Further allegations regarding the purpose of the condemnation or the necessity of the taking were unnecessary. In the absence of allegations that the condemnor acted arbitrarily or unjustly, the legislature's declaration that a specific

exercise of eminent domain is for public use is conclusive, and the condemnation proceedings are limited to a determination of the amount to be paid to acquire that use.... [A] petition to condemn an unlimited easement sufficiently describes the easement when the tract from which the easement is to be taken is described and the easement is specifically located upon it.... Other condemnation cases have found metes and bounds descriptions of easements similar to the physical description in this case to be adequate.

*Id.* at 600–601.

Notably, the supreme court also explained, as the trial judge here concluded, that an easement includes the interests necessary for the use contemplated. The court explained:

[A]n unlimited easement carries with it all rights as are reasonably necessary for enjoyment consistent with its intended use. A pipeline easement allows the condemnor, in the maintenance and construction of its pipeline, to do what is reasonably necessary to accomplish the intended purposes for which the condemnation is sought.

*Id.* at 601.

After considering the reasoning of these cases and the evidence presented at trial, we conclude the Resolution authorized and found necessity for the City's condemnation of air and subsurface rights and fixtures. Under Texas condemnation law, the Resolution is sufficient to support the presumption that the Dallas City Council "actually made a determination that the particular taking was necessary to advance the ostensible public use," *see Whittington,* 174 S.W.3d at 897, even though it did not

mention fixtures or air or subsurface rights, because it expressly stated the public use to be made of the property and the necessity of the condemnation to achieve that purpose. The Resolution was an "adequate statement of the purpose for which the easement was desired," without additional statements regarding specific fixtures or air and subsurface rights, *see Coastal Indus. Water Auth.,* 592 S.W.2d at 600, and the addition of specifics regarding fixtures and air and subsurface rights did not preclude either the special commissioners or the trial court from carrying out the statutorily-required steps of the condemnation procedure. *See PRI,* 251 S.W.3d at 478–79.

The easement included "all rights as are reasonably necessary for enjoyment consistent with its intended use," allowing the City "to do what is reasonably necessary to accomplish the intended purposes for which the condemnation is sought." *Coastal Indus. Water Auth.,* 592 S.W.2d at 601.[2] We conclude the City presented sufficient evidence from which the trial judge could conclude the Resolution authorized the acquisition of sufficient rights to construct and maintain the pedestrian walkway, including removal of fixtures and the air and subsurface rights described in the judgment. Applying the standards of review described above, we conclude the trial judge's findings of fact and conclusions of law were supported by legally and factually sufficient evidence. We overrule Pacifico's first issue.

■ In its second issue, Pacifico argues the City's pre-suit Offer to purchase the easement did not satisfy the statutory prerequisite to filing suit; i.e., that the parties

---

**2.** Further, there is no complaint that Pacifico was not compensated for these rights. The jury awarding compensation had before it an appraisal that included a damage assessment for taking the improvements, it ultimately awarded nearly twice that amount, and Pacifico does not challenge the award or its amount on appeal.

were "unable to agree" on damages for the proposed taking. *See* Tex. Prop.Code §§ 21.012(a), (b)(4); *see generally Hubenak v. San Jacinto Gas Transmission Co.,* 141 S.W.3d 172, 180, 187 (Tex.2004). Much of the evidence regarding the Offer was undisputed. The parties stipulated that on May 24, 2004, the City sent a letter to Pacifico seeking to purchase the property described in the Resolution. The letter is included in the record, and offers the sum of $27,600 for the property. The parties further stipulated the City's Offer was based upon the first Blatt appraisal. Blatt's appraisals are also included in the record. Blatt testified at trial by deposition and in person. He testified regarding the appraisals he had undertaken for the property, explaining his methodology and the values he had found for the easement and the fixtures. The parties do not dispute that the value Blatt assigned to the fixtures was not included in his first appraisal. In a subsequent appraisal, Blatt valued the property with fixtures at $65,750, the amount awarded by the special commissioners.

Pacifico argues the Offer was insufficient because it did not expressly offer to purchase fixtures or air and subsurface rights. We disagree. In *Hubenak,* the supreme court considered the "unable to agree" requirement of section 21.012 of the Property Code. *Hubenak,* 141 S.W.3d at 173–74; Tex. Prop.Code Ann. § 21.012(a); (b)(4) (Vernon Supp.2008) (condemnation petition must state that governing entity and property owner are "unable to agree" on the damages). The offer in *Hubenak* included three matters that were not included in the condemning authority's later condemnation petition. *Hubenak,* 141 S.W.3d at 175–76, 187 (condemnation statement to take natural gas pipeline easement did not include right to transport oil and other products, right to assign easements, and landowner's obligation to

warrant title that *were* included in pre-suit offer). *Hubenak* holds "exact symmetry" between a purchase offer and final condemnation judgment is not required and would be impractical "because a contract and a judgment are different animals" and could hinder the condemnation process. *See id.* at 191. Instead, *Hubenak* rejected a bright-line "mirror image" rule and adopted the following standard:

> Generally, it is sufficient that the parties negotiated for the *same physical property and same general use that became the subject* of the later eminent domain proceeding, even if the more intangible rights sought in the purchase negotiations did not exactly mirror those sought or obtainable by condemnation.

141 S.W.3d at 191 (emphasis added). The *Hubenak* majority rejected the concurring justice's proposed requirement that an offer to purchase physical property and intangible rights must "mirror the exact physical property and intangible property rights explicitly included in the subsequent condemnation proceeding." *See id.* at 190.

There is no dispute here that the Resolution, the Offer, the condemnation statement, and the trial court's judgment all contain the identical metes-and-bounds description of a tract designated for taking for the same purpose and use. *Hubenak* is thus dispositive of Pacifico's second issue. Pacifico argues *Hubenak* is inapposite because in that case the condemnor offered to purchase *greater,* not lesser, rights than ultimately condemned, resulting in no harm or prejudice to the condemnee-landowner. We do not find that distinction controlling. The Offer gave notice to Pacifico that the City intended to condemn an easement on the designated tract for use as a "pedestrian way." Neither the purpose for the condemnation nor the designated tract ever changed. Nothing in the Offer indicated the City intend-

ed to condemn anything less than "all rights as are reasonably necessary" for construction and use of the walkway. *See Coastal Indus. Water Auth.*, 592 S.W.2d at 601.

In this context, Pacifico's second issue is at best a challenge to the amount of the Offer, which *Hubenak* expressly prohibits. *See Hubenak*, 141 S.W.3d at 186 ("[T]he dollar amount of the offer generally should not be scrutinized. . . . The purpose of section 21.012's requirement that the parties be 'unable to agree' is not to require a trial on reasonable market value before the condemnation trial may begin. The condemnation trial will determine the property's value and any damage to the remainder."). If dissatisfied with the amount offered, Pacifico was free to make a counteroffer and the City was free to respond. A rule that a judgment condemning property may be attacked if a pre-suit offer fails to include every detail of a condemnor's construction plans would create needless uncertainty in condemnation proceedings and encourage excess litigation that the statutory pre-suit offer requirement was designed to forestall. *See Hubenak*, 141 S.W.3d at 186 ("purpose of the statute is 'to forestall litigation and to prevent needless appeals' ").

We conclude there is legally and factually sufficient evidence to support the trial court's findings and conclusions that the City found the requisite public necessity and authorized the taking of the easement condemned in the judgment; the City made a pre-suit offer to purchase the easement which complied with the statutory prerequisites to filing suit; and the judgment condemning the easement that encompassed fixtures and the air and subsurface rights specified therein and authorized the City's removal of Pacifico's improvements is supported by Texas law. We overrule Pacifico's issues.

## The City's Appeal

■ In two issues, the City argues the trial court's award of attorney's fees and expenses was error because the City did not "dismiss" its suit as required under section 21.019(b) of the property code and, alternatively, the award was excessive. Section 21.019(b) provides:

> A court that *hears and grants a [condemnor's] motion to dismiss a condemnation proceeding* . . . shall make an allowance to the property owner for reasonable and necessary fees for attorneys, appraisers, and photographers and for the other expenses incurred by the property owner to the date of the hearing.

TEX. PROP.CODE ANN. § 21.019(b) (Vernon 2004) (emphasis added). The City's original petition sought to condemn "a pedestrian access easement" that broadly permitted incidental improvements "in, under, [and] over" it. The City amended its petition (apparently following a mediation) qualifying that the easement sought to be condemned was limited to an ˙above-surface height of 35 feet and a sub-surface depth of 5 feet; imposing height and depth limitations on adjoining property development; and expressly reserving ingress and egress rights to Pacifico. The parties agree the City did not file, and the court did not entertain or rule on, a "motion to dismiss a condemnation proceeding," or to dismiss any part of the City's original condemnation claim. At trial, Pacifico's counsel testified that fees were incurred relating to the taking of an easement of "undetermined height" before the City amended its petition. The trial court found that the City's "amendments made to the description of property" taken was a "dismissal of a portion" of the City's condemnation suit, making TEX. PROP.CODE § 21.019 applicable. Because the trial

court concluded the City "dismissed a portion of its condemnation action," an award of fees and expenses was justified under § 21.019. In reaching this conclusion, the trial court relied on *Board of Regents v. FKM Partnership, Ltd.*, 178 S.W.3d 1, 4 (Tex.App.-Houston [14th Dist].2005, pet. granted), *aff'd*, 255 S.W.3d 619 (Tex.2008).

The Texas supreme court has subsequently clarified its view that Texas law sometimes allows recovery of expenses when a condemning authority amends its pleadings to seek less than one hundred percent of the property it originally sought to condemn. *See FKM P'ship v. Bd. of Regents*, 255 S.W.3d 619, 636 (Tex.2008). The supreme court held that an amended condemnation petition dismisses the proceedings within the meaning of section 21.019(b) even if the condemnor does not completely dismiss or abandon the proceedings, but continues them in such manner that the amendment functionally abandons the original condemnation claim and asserts a different claim. *Id.*

However, the supreme court went on to add that "section 21.019(b) does not waive a condemning authority's immunity from liability for fees and expenses when just *any* downward adjustment in the size of the property occurs." *Id.* at 637. Other factors, such as whether the planned use of the smaller tract sought by amendment differs significantly from the tract originally sought and whether the potential future uses of the different tracts are similar, may be probative on the issue, in addition to the size of the reduced claim. *Id.* In *FKM*, "the reduction in property rights to be taken constitute[d] an overwhelming part of the originally sought property." *Id.* Thus, FKM was entitled to recover fees and expenses pursuant to section 21.019(b). *Id.* The supreme court further clarified that, even though the University in *FKM* effectively abandoned its original

proceeding, FKM was not entitled to *all* its fees and expenses. *Id.* Section 21.019(b) provides that a property owner is allowed to recover fees and expenses "incurred by the property owner to the date of the hearing." *Id.* By the plain language of the statute, a landowner is not entitled to recover fees and expenses, such as appellate fees incurred after the dismissal hearing. *Id.* Furthermore, the recoverable fees and expenses are only those fees and expenses the landowner would not have incurred had the smaller tract been sought originally instead of the larger tract. *Id.*

Here, the City initially sought to condemn a "pedestrian access easement" that broadly permitted incidental improvements "in, under, [and] over" it. The City subsequently amended its petition and clarified that the easement sought to be condemned was limited to an above-surface height of 35 feet and a sub-surface depth of 5 feet, imposed height and depth limitations on adjoining property development, and expressly reserved ingress and egress rights to Pacifico. The planned use of the tract sought by amendment, with its clarification of above- and below-surface rights, does not differ significantly from the tract originally sought. *See FKM*, 255 S.W.3d at 637; *State v. Brown*, 262 S.W.3d 365, 370 (Tex.2008) (where TxDOT amended its pleadings to seek same land it sought to condemn in its presentation to special commissioners, albeit with different configuration, amended pleadings did not effect either actual dismissal or functional equivalent of dismissal). Under these circumstances, we conclude Pacifico was not entitled to an award of fees and expenses under section 21.019(b). *See FKM*, 255 S.W.3d at 637. We sustain the City's first issue. Because of our disposition of the City's first issue, we need not address the City's argument that the award under section 21.019(b) was excessive.

## CONCLUSION

In light of the foregoing, we affirm the trial court's judgment of condemnation but reverse its award of attorneys' fees and costs and render take-nothing judgment against Pacifico on its counterclaim.